1

2

3

4

5

6

7

8

9

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

MICHAEL CAIN and JENNIFER CAIN,   )
Individuals,                       )
                                   )
              Plaintiffs,          )
                                   )     No. 03:09-cv-723-HU
vs.                                )
                                   )
BOVIS LEND LEASE, INC., a Florida  )
corporation; and WILLAMETTE VALLEY )
MEDICAL CENTER, LLC, a Delaware    )
limited liability company;         )
                                   )     **FINDINGS AND RECOMMENDATIONS**
          Defendants and Third-    )     **ON MOTIONS FOR SUMMARY**
          Party Plaintiffs,        )              **JUDGMENT**
                                   )
vs.                                )
                                   )
WYLIE STEEL FABRICATORS, INC., a   )
Tennessee corporation; and EARL    )
SWENSSON ASSOCIATES, INC., a       )
Tennessee corporation;             )
                                   )
          Third-Party Defendants.  )

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 - FINDINGS AND RECOMMENDATIONS

Ernest J. Simmons
621 SW Morrison, Suite 1300
Portland, OR 97205

Karen R. Thompson
1400 SW Montgomery
Portland, OR 97201

Robert K. Udziela
1515 SW Fifth Avenue, Suite 808
Portland, OR 97201

     Attorneys for Plaintiffs


John J. Soltys
Peter J. Mintzer
Ramona N. Hunter
COZEN O'CONNOR
1201 Third Avenue, Suite 5200
Seattle, WA 98101

     Attorneys for Defendant and Third-Party
     Plaintiff Bovis Lend Lease, Inc.


Steven P. Jones
Karen V. Wiggins
KEATING JONES HUGHES PC
One SW Columbia, Suite 800
Portland, OR 97258

     Attorneys for Defendant and Third-Party
     Plaintiff Willamette Valley Medical Center, LLC


Matthew C. Casey
BULLIVANT HOUSER BAILEY, PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

     Attorney for Third-Party Defendant
     Wylie Steel Fabricators, Inc.


Arnold L. Gray
Lawrence A. Wagner
Tyler J. Storti
STEWART SOKOL & GRAY LLC
2300 SW First Ave., Suite 200
Portland, OR 97201

     Attorneys for Third-Party Defendant
     Earl Swensson Associates, Inc.


2 - FINDINGS AND RECOMMENDATIONS

1

*TABLE OF CONTENTS*

2

3

4   *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . *4*

5   *SUMMARY JUDGMENT STANDARDS.* . . . . . . . . . . . . . . . . *8*

6   *ESA'S MOTION FOR PARTIAL SUMMARY JUDGMENT.*. . . . . . . . . *10*

7   *CAIN'S CLAIMS UNDER THE OREGON SAFE EMPLOYMENT ACT.* . . . . *10*

8       *First Claim for Relief: Violation of OSEA § 654.015*
        *and Second Claim for Relief: Violation of*
9       *OSEA § 654.010.*. . . . . . . . . . . . . . . . . . . *18*

10      *Bovis's Motion.*. . . . . . . . . . . . . . . . . . . *19*

11      *Willamette Valley's Motion.*. . . . . . . . . . . . . *21*

12      *Wylie Steel's Motion.*. . . . . . . . . . . . . . . . *27*

13  *THIRD CLAIM FOR RELIEF: PREMISES LIABILITY.* . . . . . . . . *28*

14  *FOURTH CLAIM FOR RELIEF: BOVIS'S VIOLATION OF THE ELA.*. . . *37*

15  *FIFTH CLAIM FOR RELIEF: NEGLIGENCE.* . . . . . . . . . . . . *42*

16  *SIXTH CLAIM FOR RELIEF: LOSS OF CONSORTIUM.* . . . . . . . . *50*

17  *WYLIE STEEL'S MOTION.* . . . . . . . . . . . . . . . . . . . *51*

18      *Wylie Steel's Statute of Limitations Defense.*. . . . *51*

19      *Assertion of a New Claim.*. . . . . . . . . . . . . . *61*

20      *Indemnity Claims.*. . . . . . . . . . . . . . . . . . *63*

21  *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . *65*

22  *SCHEDULING ORDER.* . . . . . . . . . . . . . . . . . . . . . *66*

23

24

25

26

27

28

HUBEL, Magistrate Judge:

## INTRODUCTION

This is an action arising from injuries suffered by the plaintiff Michael Cain ("Cain") when he fell from a ladder while working on a renovation project at Willamette Valley Medical Center ("Willamette Valley" or "the hospital"). Cain brings claims against all of the defendants for violation of the Oregon Safe Employment Act ("OSEA"), O.R.S. § 654.015, and for common-law negligence. He brings additional claims against Bovis Lend Lease ("Bovis") for violation of OSEA § 654.010, premises liability, and violation of the Oregon Employer Liability Act ("ELA"), O.R.S. §§ 654.305-654.335; and against Willamette Valley for premises liability. Dkt. #91, Second Amended Complaint. Cain seeks "general damages" up to $3,000,000; ongoing lost income in excess of $58,500; lost earning capacity in the amount of $650,000; and ongoing medical bills in excess of $229,722.28. Mrs. Cain brings a loss of consortium claim against all of the defendants, seeking damages in the amount of $300,000. *Id.*

The basic facts of the case are straightforward and, except as discussed later in this opinion, largely undisputed. The following factual summary is taken from the Second Amended Complaint, and the defendants' motions for summary judgment. *See* Dkt. #91, Second Amended Complaint; Dkt. #121, Willamette Valley's memorandum, at 9-11; Dkt. #148, Cain's response to Willamette Valley's statements of material fact; Dkt. #124, ESA's Concise Statement of Material Facts; Dkt. #129, Wylie Steel's Concise Statement of Material Facts; Dkt. #133, Bovis's Statement of Undisputed Facts; and Dkt. #147, Cain's response to Bovis's statement of material facts.

4 - FINDINGS AND RECOMMENDATIONS

1    In 2006, Willamette Valley and its former owner, Triad

2 Hospitals, Inc., contracted with Bovis, as general contractor, for

3 a major renovation to Willamette Valley's health care facility in

4 McMinnville, Oregon.  Bovis, in turn, contracted with McDonald &

5 Wetle ("McDonald"), a commercial roofing company, to install a new

6 roof as part of the project.  Cain was an experienced roofer who

7 was employed as a foreman by McDonald.

8    Willamette Valley also contracted with Earl Swensson

9 Associates, Inc. ("ESA") to perform architectural design work for

10 the project.  As part of ESA's contract with Willamette, ESA

11 designed a fixed metal ladder to be installed on Willamette's

12 premises to allow access from a lower roof to the "penthouse roof."

13 Actual fabrication of the ladder was done by Wylie Steel

14 Fabricators, Inc. ("Wylie Steel"), a Bovis subcontractor.  In

15 approximately September of 2007, Bovis installed the ladder on

16 Willamette Valley's premises.  The ladder was accessible only by

17 authorized personnel through an internal maintenance area at the

18 hospital.  Construction workers used the ladder as needed while

19 work progressed on the renovation project.  Cain, himself, had used

20 the ladder more than once prior to his accident.  *See* Dkt. #122,

21 Ex. 9, Cain Depo., at pp. 114-15.

22    In December 2007 and January 2008, Willamette was experiencing

23 problems with ongoing roof leaks from the newly-installed penthouse

24 roof.  On January 10, 2008, McDonald sent Cain to the site to

25 investigate the roof leaks.  Cain was met at the job site by

26 Delbert Allen, a Bovis employee, who provided access to the

27 restricted area using a key issued to him by Willamette Valley.

28 Cain had investigated the roof leaks on at least two previous

5 - FINDINGS AND RECOMMENDATIONS

occasions.  This time, Cain was going to conduct a flood test, where he would plug the drains and then flood the penthouse roof to determine the exact location and cause of the leaks.[1]  Equipment required for the test included drain plugs and a hose.

Cain testified that the ladder "looked fine" to him, and he did not observe anything unusual or wrong with the ladder on the day of his accident.  *Id.*, p. 116.  If he had noticed anything wrong with the ladder, he would have reported it and not climbed the ladder.  Dkt. #122, Ex. 9, Cain Depo., at p. 114-15.  However, he also testified the ladder was somewhat awkward to climb because of its width.  Doc. No. 144, Ex. A, Cain Depo., at pp. 125, 127.

Cain began climbing the ladder with a hose coiled over his shoulder.  He also was carrying two drain plugs in his hands as he walked to the ladder, but he claims he did not climb the ladder with the drain plugs in his hands.  Dkt. #147, p. 7.  Drain plugs are visible in photographs taken of Cain immediately after the accident.  *See* Decl. of Ramona N. Hunter, Dkt. #134, Ex. D.  Cain testified he put the hose over his shoulder, and then began climbing the ladder hand-over-hand, "because it was uncomfortable to go side rail."  Dkt. #134, Ex. A, Cain Depo., p. 258; *see* Dkt. #144, Ex. 1, Cain Depo., p. 127.  As Cain neared the top of the

---

[1]Bovis contends Cain "testified under oath that the decision to conduct the leak test was his and his alone."  Dkt. #133, p. 5 (citing Dkt. #134, Ex. A, Cain Depo., at 106, ll. 22-25; p. 107, ll. 1-3).  Cain disputes this assertion, stating he "testified that Del Allen directed him to do a leak test."  Dkt. #147, p. 6 (citing Cain Depo. at p. 104, ll. 10-12).  Incredibly, neither Bovis nor Cain submitted these cited pages to the court.  However, page 104 of Cain's deposition was submitted by Willamette Valley in support of its motion, and the transcript indicates Cain testified the leak test was Allen's idea.  Dkt. #122, Ex. 9, Cain Depo, p. 104.

1  ladder, he "put [his] hand on the grab rail to pull [himself] up
2  over the parapet, up over the edge," *id.*, and he fell from the
3  ladder to the roof, about seventeen feet below, sustaining severe
4  injuries.   Cain claims the ladder was defective and its design
5  dangerous, and these alleged defects were the proximate cause of
6  his fall.

7      Cain agrees that at the time of the accident, he was "a
8  trained roofer, with 20 years of experience," and he "knew the
9  basic rules of ladder safety, the most fundamental of which were
10 (1) not to climb with your hands encumbered; and (2) always
11 maintain three points of contact on the ladder at all times."  Dkt.
12 #147, p. 8.  Cain believes he "had all hands and feet where they
13 should have been" immediately prior to the fall.  Dkt. #134, Ex. A,
14 Cain Depo., p. 207.

15     After the accident, McDonald was cited by the Oregon
16 Occupational Safety and Heath Division "for failing to provide
17 adequate fixed ladder training."  Dkt. #147, p. 11; *see* Dkt. #134,
18 Ex. E, Citation and Notification of Penalty.  The parties agree
19 that McDonald is "statutorily immune from liability as Mr. Cain's
20 employer."  *Id.*, p. 12.

21     All of the defendants have filed motions for summary
22 judgment.[2]  Bovis, Willamette Valley, and Wylie Steel seek summary

23

24     [2]The defendants' motions for summary judgment and the opposing
   parties' responses are as follows:

25
*      Dkt. #120, #121, & #122 - **Willamette Valley's motion** for
26     summary judgment, supporting brief, and declaration with
       exhibits; Dkt. #148, Cain's response to Willamette Valley's
27     statements of material fact; Dkt #142, Cain's memorandum in
       opposition to Willamette Valley's motion; Dkt. #144,
28                                                     (continued...)

1  judgment on all of Cain's claims.  ESA seeks partial summary

2  judgment as to Cain's "First Claim for Relief: Violation of Oregon

3  Safe Employment Act, ORS 654.015."  Dkt. #123, p. 2.

4       I first will set forth the standards applicable to the court's

5  consideration of motions for summary judgment.  I then will turn to

6  consideration of the defendants' motions for summary judgment.

7

8                    ***SUMMARY JUDGMENT STANDARDS***

9       Summary judgment "should be rendered if the pleadings, the

10  discovery and disclosure materials on file, and any affidavits show

11  that there is no genuine issue as to any material fact and that the

12

13  ───────────────

14  [2](...continued)
    Declaration of E.J. Simmons in response to all of the
15  defendants' motions; and Dkt. #154, Willamette Valley's reply
    in support of its motion.
16  *    Dkt. #123, #124, & #125 - **ESA's motion** for summary judgment,
    supporting brief, and declaration; Dkt. #144, Declaration of
17  E.J. Simmons in response to all of the defendants' motions;
    Dkt. #146, Cain's response to ESA's statement of material
18  facts; and Dkt. #157, Cain's statement of non-opposition to
    ESA's motion.
19  *    Dkt. #127, #128, #129, & #130 - **Wylie Steel's motion** for
    summary judgment, supporting brief, statement of material
20  facts, and supporting declaration with exhibits; Dkt. #143,
    Cain's memorandum in opposition to Wylie Steel's motion; Dkt.
21  #144, Declaration of E.J. Simmons in response to all of the
    defendants' motions; Dkt. #145, Cain's response to Wylie
22  Steel's statement of material facts; Dkt. #140, Willamette
    Valley's memorandum in response to "Part G" of Wylie Steel's
23  motion; Dkt. #149, Wylie Steel's reply to Willamette Valley's
    response; Dkt. #152, Wylie Steel's reply to Cain's response;
24  and Dkt. #153, Wylie Steel's response to Cain's statement of
    facts.
25  *    Dkt. #132, #133, & #134 - **Bovis's motion** for summary judgment,
    supporting brief, and declaration with exhibits; Dkt. #147,
26  Cain's response to Bovis's assertions of material fact; Dkt.
    #141, Cain's memorandum in opposition to Bovis's motion; Dkt.
27  #144, Declaration of E.J. Simmons in response to all of the
    defendants' motions; and Dkt. #150, Bovis's reply in support
28  of its motion.

8 - FINDINGS AND RECOMMENDATIONS

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S. Ct. 2505.

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

1

### ESA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2  ESA's motion for partial summary judgment can be resolved
3  quickly, so I will address it first.  The Oregon Safe Employment
4  Act provides, "No employer or owner shall construct or cause to be
5  constructed or maintained any place of employment that is unsafe or
6  detrimental to health."  O.R.S. § 654.015.  ESA argues O.R.S.
7  § 654.015 does not provide for a private cause of action, but even
8  if it does, the statute does not apply to ESA in this context
9  because ESA was never Cain's direct employer or the owner of the
10  facility. Dkt. #125.  Cain filed a response to ESA's statement of
11  material facts, Dkt. #146, but despite Cain's disagreement with
12  some of those facts, Cain does not oppose ESA's motion for partial
13  summary judgment.  *See* Dkt. #157.  It is clear from the undisputed
14  facts that ESA was never Cain's employer, nor was ESA an "owner" of
15  the premises as contemplated by the statute.  I therefore recommend
16  ESA's motion for partial summary judgment be granted as to Cain's
17  First Claim for Relief, leaving, as to ESA, only a common-law
18  negligence claim.

19

20

### CAIN'S CLAIMS UNDER THE OREGON SAFE EMPLOYMENT ACT

21  Cain has asserted two statutory tort claims for alleged
22  violations of the OSEA.  In his First Claim for Relief, he seeks
23  damages for the defendants' violation of OSEA § 654.015, quoted
24  above.  In his Second Claim for Relief, he seeks damages from Bovis
25  for violation of OSEA § 654.010,

26  which in substance requires every employer to
(1) furnish employment safe for employees
27  therein; (2) furnish a place of employment
safe for employees therein; (3) furnish and
28  use such safety devices and to adopt such

10 - FINDINGS AND RECOMMENDATIONS

> means as are reasonably adequate to render
> such employment and place of employment safe;
> and (4) to do every other thing reasonably
> necessary to protect the life and safety of
> such employees.

*Hillman v. Northern Wasco County People's Utility District*, 213 Or. 264, 289, 323 P.2d 664, 676 (1958), *overruled on other grounds by Maulding v. Clackamas County*, 278 Or. 359, 563 P.2d 731 (1977).

In support of his contention that the defendants failed to maintain or construct a safe place of employment, Cain lists numerous state and federal regulations he claims the defendants violated. *See* Dkt. #91, pp. 5-6. Among other things, he invokes a third section of the OSEA which requires "[e]very employer, owner, employee and other person" to obey all orders, decisions, rules, and regulations applying to employee health and safety. O.R.S. § 654.022. Cain also alleges numerous failures to provide a safe workplace without specifying a particular statute or regulation that was violated. *See* Dkt. #91, ¶¶ 11(k), (l), (m) & (n).

A threshold question in considering the defendants' motions for summary judgment on these OSEA claims is whether the OSEA provides for a private cause of action for damages. The court's decision on the issue will affect Cain's OSEA claims against all of the defendants. As a result, the court will examine the issue of whether a private right of action exists under the OSEA before considering the defendants' summary judgment motions on Cain's individual claims.

The Iowa Supreme Court explained the legislative history and purpose of the original Oregon Safe Employment Act in *Hillman*:

11 - FINDINGS AND RECOMMENDATIONS

> The act regulating safety of places of employment was enacted by Oregon Laws 1920, ch. 48, p. 84, and is now codified, together with other related acts, in ORS ch. 654. . . . [T]he safety act . . . is not an amendment of the workmen's compensation law but a separate and independent act.
>
> . . .
>
> It is worthy of note that the safety act was one of a series of acts adopted in the early part of this century for the protection of workmen. . . . The basic purpose of the safety act is clearly evident from the language of the first section thereof, now ORS 654.010. . . .
>
> The second section of the act, now ORS 654.015, prohibits any employer, owner or lessee of any real property from constructing or maintaining any place of employment that is not safe.

*Hillman*, 213 Or. at 287, 289-90, 323 P.2d at 675, 676-77 (footnotes omitted); *see Miller v. Georgia-Pacific Corp.*, 294 Or. 750, 752 n.1, 662 P.2d 713, 719 n.1 (1983) (citing the *Hillman* historical summary of Oregon's long-standing "safety act").

The current OSEA was enacted in 1973, "retain[ing] many provisions from the previous safety legislation[.]" *Miller*, 294 Or. at 752, 662 P.2d at 719. The Act "was enacted for essentially the same reasons as its predecessor safety acts were enacted – 'to assure as far as possible safe and healthful working conditions for every working man and woman in Oregon. . . .'" *Id.*, 294 Or. at 759, 662 P.2d at 723 (quoting Or. Rev. State. § 654.003) (emphasis omitted).

The OSEA defines "Employer" to include, in pertinent part, "[a]ny person who has one or more employees," and "[a]ny successor or assignee of an employer." O.R.S. § 654.005(5)(a) & (c). An "Employee" includes, in pertinent part, "[a]ny individual . . . who

12 - FINDINGS AND RECOMMENDATIONS

engages to furnish services for a remuneration, financial or otherwise, subject to the direction and control of an employer," and "[a]ny individual who is provided with workers' compensation coverage as a subject worker. . . ." O.R.S. § 654.005(4)(a) & (c). An "Owner" is "every person having ownership, control or custody of any place of employment or of the construction, repair or maintenance of any place of employment." O.R.S. § 654.005(6). A "[p]lace of employment" includes:

> (A) Every place, whether fixed or movable or moving, whether indoors or out or underground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employee works or is intended to work; and

> (B) Every place where there is carried on any process, operation or activity related, either directly or indirectly, to an employer's industry, trade, business or occupation. . . ."

O.R.S. § 654.005(8)(a); *see Miller*, 294 Or. at 759, 662 P.2d at 723 (quoting the statute).

The OSEA does not expressly provide a civil remedy to those injured by violations of the Act. As a result, such a "right of action must exist by implication, if at all." *Eduardo v. Clatsop Comm. Resources Dev. Corp.*, 168 Or. App. 383, 389-90, 4 P.3d 83, 87 (2000). The court is mindful that "[w]hen interpreting state law, federal courts are bound by decisions of the state's highest court." *Williamson v. Munsen Paving LLC*, No. CV 09-736, slip op., 2010 WL 1063575, at *4 (D. Or. Mar. 2, 2010) (Acosta, MJ) (Findings & Recommendation on Munsen's 12(b)(6) motion to dismiss) (hereafter "*Williamson III*") (citing *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)).

13 - FINDINGS AND RECOMMENDATIONS

1    This court previously had occasion to examine Oregon case law
2  on a somewhat similar issue, but in the context of an action
3  brought by a _non-employee_.  In *Wickham v. Apollo, Inc.*, No. 05-
4  0352, 2005 WL 1705028 (D. Or. June 28, 2005), the plaintiff Wickham
5  was a passenger in a car that collided with a backhoe parked on the
6  shoulder of the highway.  The plaintiff was injured, and he sued
7  Apollo, which owned the backhoe, for damages on theories of negli-
8  gence and negligence *per se*.  On the latter claim, Wickham claimed
9  Apollo had violated a regulation that required the placement of
10 warning devices near the backhoe to alert others to its location.
11 The regulation at issue was a federal OSHA regulation, adopted by
12 reference in OAR 437-003-0001(15)(a).[3]   The OSEA provided the
13 statutory authority for Oregon's adoption of the regulation.  *See*
14 *Wickham*, 2005 WL 1705028, at *1 & n.1.

15    The defendant moved to dismiss the negligence *per se* claim,
16 asserting that

17              1) an alleged violation of the regulation
                 cannot form the basis for a statutory negli-
18              gence claim in Oregon; 2) plaintiff [was] not
                 an employee of Apollo and therefore not within
19              the class of persons intended to be protected
                 by the regulation; and 3) any provision of
20              [OSEA], the statutory authority for Oregon's
                 adoption of the regulation, that provides for
21              a private right of action by a non-employee is
                 *ultra vires*.

22

23 *Id.*  My examination of Oregon case law on the issues in *Wickham* is
24 instructive in the present case:

25

26

27      [3]"The Oregon Administrative rules adopt by reference specific
   provisions of the Code of Federal Regulations."  *George v. Myers*,
28 169 Or. App. 472, 476 n.4, 10 P.3d 265, 268 n.4 (2000).

In *Shahtout v. Emco Garbage Co.,* 298 Or. 598, 600 (1985), the court explained the effect of a governmental regulation in actions for damages, distinguishing between liability for damages based on violation of the rule, and the significance of such a violation in establishing common law liability. A law that is designed to protect some or all persons against a particular risk of harm may expressly or impliedly give persons within the protected class a right to recover damages if noncompliance with the law results in harm of the kind the law seeks to prevent. *Id.,* citing *Nearing v. Weaver,* 295 Or. 702 (1983). See *also Bellikka v. Green,* 306 Or. 630, 650 (1988) ("This court has recognized that there are instances where the legislature has, in effect, created a tort."). Such claims are referred to as statutory negligence claims, or statutory torts. *Bellikka,* 306 Or. at 636. Such statutory torts exist "independent of any parallel common-law claim and can be pleaded independently, with or without an accompanying common-law claim." *Id.* at 650.

Statutory torts are not "negligence *per se.*" *Shahtout,* 298 Or at 601. The phrase "negligence *per se*" can apply only to cases brought on a theory of liability for negligence rather than liability grounded in obligations created by statute. *Id.* at 600. Even when a statute neither expressly nor impliedly gives a person injured by its violation any claim for damages, the injured person may have such a claim under existing common law negligence theories. The statutory violation may be evidence of the common law negligence. *Id.*

A plaintiff may assert both statutory and common law theories of liability on the same facts. *Id.* The court in *Shahtout* explained:

In a negligence case, the plaintiff must show that defendant did not meet an applicable standard of due care under the circumstances. When a plaintiff invokes a governmental rule in support of that theory, the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the . . . legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of

15 - FINDINGS AND RECOMMENDATIONS

1
2
3
4
5
6

> law. This court has long held that
> violations of statutory safety rules
> by themselves provide the element of
> negligence with respect to those
> risks that the rules are meant to
> prevent, at least unless the vio-
> lator shows that his conduct in fact
> did not violate the rule under the
> circumstances.
>
> *Id.* at 601.

7   *Wickham*, 2005 WL 1705028, at **1-2.

8       I went on to consider whether the plaintiff in the case had

9   stated a claim for either negligence *per se* or statutory tort:

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

> Claims based on theories of statutory tort or
> negligence *per se* require both an initial
> determination that the statute or rule which
> is the source of the defendant's duty protects
> a class of persons of which the plaintiff is a
> member by proscribing or requiring certain
> conduct and that the harm that the defendant
> has inflicted is of the type against which the
> rule is intended to protect. *Beeman v.
> Gebler,* 86 Or. App. 190, 193 (1987). To state
> a claim, plaintiff must show that the statute
> provides a private right of action under a
> four part test: 1) defendants violated a
> statute; 2) plaintiff was injured as a result
> of that violation; 3) plaintiff was a member
> of the class of persons meant to be protected
> by the statute; and 4) plaintiff suffered the
> type of injury the statute was intended to
> protect against. *McAlpine v. Multnomah
> County,* 131 Or. App. 136, 144 (1994). An
> additional requirement, when the claim is
> based on violation of an administrative regu-
> lation rather than a statute, is that even
> when the regulation meets the *McAlpine*
> factors, its terms permitting the imposition
> of private liability must not be *ultra vires.*
> *Ettinger v. Denny Chancler Equipment Co.,
> Inc.,* 139 Or. App. 103, 107 (1996).

25   *Wickham*, 2005 WL 1705028, at *2. I observed that "[i]n *Shahtout*,

26   298 Or. at 604, the court held that the OSEA does not extend its

27   coverage to private causes of action by a non-employee against an

28   employer. . . . However, the court made it clear that violation of

16 - FINDINGS AND RECOMMENDATIONS

1    the regulation was relevant to the determination of due care in a

2    common law negligence claim[.]" *Id.*, 2005 WL 1705028, at *3

3    (citing *Shahtout*, 298 Or. at 603).

4         I concluded, in *Wickham*, that the agency adopting the safety

5    regulation at issue "had not been granted the authority to

6    establish a cause of action in favor of a person not within the

7    purview of worker safety regulations.  To the extent this regula-

8    tion is logically read to establish such a cause of action, it is

9    *ultra vires*." *Id.*, 2005 WL 1705028, at *4 (relying on *Ettinger v.*

10   *Denny Chancler Equipment Co.*, 139 Or. App. 103, 107, 910 P.2d 420,

11   422 (1996)).  I further noted, however, that violation of a

12   regulation "may be relevant evidence to show common law

13   negligence[.]" *Id.*

14        My ultimate conclusion in *Wickham* is not applicable here,

15   because the case involved a person "not within the purview of

16   worker safety regulations." *Id.*  Cain, on the other hand, clearly

17   falls within the purview of statutes and regulations adopted for

18   the protection of workers in Oregon.  My analysis in *Wickham*

19   illustrates that Cain's OSEA claims in the present case are based

20   on theories of statutory tort rather than on negligence *per se*.  I

21   find that Cain can bring a private action for damages under the

22   OSEA if his OSEA claims meet the four-part test recognized by the

23   court in *McAlpine v. Multnomah County*, 131 Or App. 136, 144, 883

24   P.2d 869, 873 (1994).

25        I therefore will examine the defendants' motions for summary

26   judgment on each of Cain's claims, applying the *McAlpine* test,

27   where appropriate, to claims based on violations of the OSEA.

28

17 - FINDINGS AND RECOMMENDATIONS

**First Claim for Relief: Violation of OSEA § 654.015
and Second Claim for Relief: Violation of OSEA § 654.010**

Cain's First Claim for Relief is asserted against all of the defendants[4] for their alleged violation of OSEA § 654.015, which provides, "No employer or owner shall construct or cause to be constructed or maintained any place of employment that is unsafe or detrimental to health." O.R.S. § 654.015.

His Second Claim for Relief is asserted only against Bovis, for allegedly violating OSEA § 654.010, which provides:

> Every employer shall furnish employment and a place of employment which are safe and health-ful for employees therein, and shall furnish and use such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of such employees.

O.R.S. § 654.010  Although Cain's Second Claim is brought only against Bovis, one of the allegations in support of his First Claim for Relief is that the defendants failed to provide him "with a safe place to work in violation of ORS 654.010." Dkt. #91, ¶ 11(f).

O.R.S. § 654.015 clearly applies to two classes of actors, to-wit: employers, and owners or lessees of real property that constitutes a "place of employment." Thus, for Cain to prevail on his claim that Bovis, Willamette Valley, and Wylie Steel violated § 654.015, he must show, among other things, that each of those defendants either was his employer, or was an owner or lessee of

---

[4]I recommended, *infra* p. 10, that ESA be granted summary judgment on this claim.

18 - FINDINGS AND RECOMMENDATIONS

real property constituting a place of employment at the time of the accident.

Similarly, § 654.010 clearly applies only to employers. The defendants assert that none of them qualifies as an "employer" for purposes of these statutes. *See* Dkt. #121, pp. 20-22; Dkt. #128, pp. 8-14.; Dkt. #133, pp. 16-19. Willamette Valley further argues that although it owned the premises where Cain was injured, Cain has offered no evidence, either through expert testimony or otherwise, that Willamette Valley violated the regulations underlying § 654.015, nor were the premises a "work place" as contemplated by the OSEA. *See* Dkt. #121, pp. 21-23; Dkt. #154, pp. 24-26.

Thus, the first issue for consideration is whether any of the defendants was Cain's "employer" for purposes of the OSEA. There is no question, and Cain does not argue, that Willamette Valley or Wylie Steel was ever Cain's employer. Thus, I address this issue only with respect to Bovis.

**Bovis's Motion**

Cain argues Bovis was his "indirect employer" under the ELA, subjecting Bovis to liability for violation of the OSEA. Dkt. #141, pp. 32-35. The Oregon Court of Appeals has held repeatedly that, "[u]nlike the ELA, the OSEA does not extend its coverage to indirect employees." *German v. Murphy*, 146 Or. App. 349, 932 P.2d 580 (1997) (citing *Flores v. Metro Machinery Rigging, Inc.*, 99 Or. App. 636, 641, 783 P.2d 1024, 1027 (1989), *rev. den.*, 309 Or. 521, 789 P.2d 1386 (1990)); *accord George v. Myers*, 169 or. App. 472, 477, 10 P.3d 265, 268 (2000). Cain argues the Oregon Supreme

19 - FINDINGS AND RECOMMENDATIONS

Court's decision in *Miller* is at odds with the later Oregon Court of Appeals decisions. He maintains that although the Oregon Court of Appeals has "held that OSEA claims cannot be made against indirect employers, . . . the Oregon Supreme Court emphatically has held that they can." Dkt. #141, p. 32 (citing *Miller*, 294 Or. 750, 662 P.2d 718 (1983)).

Cain relies on the *Miller* court's ruling that the plaintiff could maintain a claim against an indirect employer *under the ELA* based on the defendant's alleged violation of the OESA. *Id.*, p. 34. Cain confuses the issue. As to his First and Second Claims for Relief, the issue is not whether he can maintain *an ELA claim* against Bovis, supported by Bovis's alleged violation of the OESA. Rather, the issue is whether he can maintain stand-alone claims (i.e., not ELA claims) against Bovis, as an indirect employer, for violations of the OESA itself. I find that he cannot. "[T]he purpose of the [OSEA] is to require an employer to take necessary steps to protect its own employees, not those of other employers." *Flores v. Metro Machinery Rigging, Inc.*, 99 Or. App. at 636, 641, 783 P.2d 1024, 1027 (1989). The Oregon Supreme Court's holding in *Miller* is not to the contrary.

Cain's First and Second Claims for Relief against Bovis are both premised on Bovis's alleged violations of the OSEA. Bovis was never Cain's direct employer. Because OSEA liability does not lie against an indirect employer, and because there is no argument that Bovis ever was an "owner" of the premises for purposes of the OSEA, I find that Cain has failed to state a cognizable claim against Bovis for violations of the OSEA, and Bovis's motion for summary judgment on Cain's first two claims for relief should be granted.

20 - FINDINGS AND RECOMMENDATIONS

**Willamette Valley's Motion**

Moving on to Cain's claim that Willamette Valley violated OSEA § 654.015, Cain does not attempt to argue that Willamette Valley was his employer. Rather, he claims Willamette Valley was an "owner" for purposes of liability under OSEA § 654.015. Cain relies on *Williamson v. Munsen Paving, LLC*, No. CV-09-736, slip op., 2009 WL 4505443 (D. Or. Nov. 30, 2009) (King, J) ("*Williamson I*"), and *Williamson v. Munsen Paving, LLC*, 2010 WL 1224232 (D. Or. Mar. 19, 2010) (King, J) ("*Williamson II*"), in which Judge King twice affirmed Findings and Recommendations by Judge Acosta in a case brought under the OSEA. Williamson, an employee of Wikel Excavation, LLC, was waiting with a pickup truck to pick up a load of gravel at Munsen's facility. A Munsen employee backed up a dump truck he was driving, hitting Williamson and driving over Williamson's left leg and right foot. Williamson sued Munsen to recover damages for his injuries. He sued on theories of negligence, violation of the ELA, and violation of the OSEA.

Munsen moved to dismiss, arguing, as to the OSEA claim, that "the OSEA was adopted for the protection of employees against their direct employers, and that Williamson cannot plead membership in the group intended to be protected by the OSEA because he is not Munsen's employee." *Williamson I*, 2009 WL 4505443, at *3. Williamson responded "that the OSEA imposes liability upon owners of places of employment, not only direct employers. Thus, Williamson contend[ed], as applied to owners, the duties under the OSEA extend to workers of other employers." *Id.* Judge Acosta'a analysis, adopted in its entirety by Judge King, is relevant to the present inquiry.

Judge Acosta noted that O.R.S. § 656.105 applies to both an employer *and an owner*, and mandates an owner's compliance with orders, decisions, rules, standards, and regulations that affect an employee's life, health, and safety. *Id.* He distinguished authorities cited by the defendant in the case, noting Williamson had not "based his OSEA claim on the premise that Munsen [was] his indirect employer," but instead relied "on the OSEA's application to owners and Munsen's undisputed status of owner of the premises where Williamson's injury occurred." *Id.*, 2009 WL 4505443, at *4 (discussing *Moe v. Beck,* 100 Or. App. 177, 180-81, 785 P.2d 781 (1991), in which the court held that "the legislature did not define as 'owner' any person with 'ownership, control *and* custody'. Rather, it defined as 'owner' any person who has 'ownership, control or custody.'").

Judge Acosta found *Brown v. Boise-Cascade Corp.,* 150 Or. App. 391, 946 P.2d 324 (1997), to be on point:

> In *Brown v. Boise-Cascade Corp.,* 150 Or. App. 391 (1997), the Oregon Court of Appeals explained owners' liability under the OSEA. *Brown* expanded *Moe's* discussion by observing that although the word "owner" is ambiguous, the OSEA clearly defines an owner in the disjunctive: as a person who has *either* control, custody, or ownership of a place of employment. *Brown,* 150 Or. App. at 407. The *Brown* court then observed that "at least in some circumstances, ownership of a premises where OSEA violations occur is sufficient to support negligence *per se* liability even if the defendant had no direct involvement in, or control over, the injury producing activity." *Id.* However, ownership liability under the OSEA lies "only if the regulation whose violation underlies the OSEA claim is one that either explicitly, or by nature, imposes obligations on owners of premises." *Id.* at 408.
>
> The *Brown* court also cited *Moe* as an example of how OSEA regulations apply to an owner. In *Moe,* driving was the ordinary and

foreseeable use of the "workplace" that the defendant owned, the dump truck. Providing and maintaining adequate brakes was essential to the safe operation of that "workplace." "Thus, although regulations underlying the plaintiff's negligence *per se* claim in *Moe* did not expressly refer to owners, the defendant there was nevertheless subject to those regulations." *Brown,* 150 Or. App. at 408. The *Brown* court then analyzed the plaintiff's particular allegations underlying his OSEA claim based on the *Moe* analysis, and concluded that the plaintiff's cited rules pertaining to inadequate lighting did apply to the defendant owner. *Brown* and *Moe* make clear that Williamson may bring an OSEA claim against Munsen as an owner, and that he may properly rely on those regulations intended to implement the OSEA's applicability to owners. Accordingly, Williamson may base his claim against Munsen on the OSEA, because the act applies to owners such as Munsen, and he may allege that the act's implementing regulations are standards of care against which Munsen's conduct should be evaluated. Therefore, Munsen's 12(b)(6) motion should be denied to the extent that it seeks dismissal of Williamson's complaint for failing to allege a cognizable claim.

*Williamson I*, 2009 WL 4505443, at **3-5.

Despite finding that Williamson's claim against Munsen was legally cognizable, the court further found that "his complaint failed to allege facts sufficient to state such a claim." *Williamson III*, 2010 WL 1063575, at *1. The court ordered him to amend his complaint to cite the current version of the OSEA provisions upon which he relied, and to tie his factual allegations to the specific regulations upon which he relied. *See id*. Williamson filed his amended complaint, and Munsen filed a second motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), again arguing the OSEA's implementing regulations upon which Williamson relied were not applicable to owners.

Judge Acosta again relied on *Brown*, observing as follows:

When interpreting state law, federal courts are bound by decisions of the state's highest court. *Ariz. Elec. Power Coop., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir. 1995). In Oregon, ownership liability lies "only if the regulation whose violation underlies the OSEA claim is one that either explicitly, or by nature, imposes obligations on owners of premises." *Brown,* 150 Or. App. at 408, 946 P.2d 324. By nature, regulations pertaining to workplace structures or safeguards apply to owners. *Id.* Conversely, requirements pertaining to work practices or methods apply to employers. *Id.*

In *Brown,* the court concluded that the regulations cited by plaintiff pertaining to inadequate lighting did apply to the defendant owner. *Id.* at 413, 946 P.2d 324. Explaining its holding the court stated: "We conclude that the lighting regulations at issue here do apply to owners. That is, owners are obligated, as a *structural matter,* to equip workplaces with lighting adequate for the work that ordinarily would occur within that type of workspace." *Id.* (emphasis added).

The *Brown* court cited *Moe v. Beck,* 100 Or. App. 177, 785 P.2d 781 (1991), as an example of how OSEA regulations apply to an owner. *Brown,* 150 Or. App. at 408, 946 P.2d 324. In *Moe,* driving was the ordinary and foreseeable use of the workplace owned by the defendant, namely the dump truck. *Id.* Providing and maintaining adequate brakes was essential to the continuing *structural integrity and safe operation* of that workplace in its ordinary and intended manner. *Id.* (emphasis added). "Thus, even though the regulations in *Moe* did not expressly refer to owners, the defendant there was nevertheless subject to those regulations." *Id.*

*Williamson III*, 2010 WL 1063575, at *4.

Based on the *Williamson* analyses, I find, as a threshold matter, that Cain has stated a claim against Willamette Valley, as an "owner," for violation of OSEA § 654.015. The owner of the premises where Cain was working was obligated, as a structural matter, to ensure the fixed ladder complied with applicable regulations and was safe for Cain and others to use. Willamette

24 - FINDINGS AND RECOMMENDATIONS

Valley attempts to distinguish the *Williamson* case on its facts, *see* Dkt. #154, pp. 23-24, but the court is not persuaded by the hospital's argument in that regard.

Willamette Valley further argues Cain has offered no expert testimony to support his allegation that the hospital violated any of the regulations cited by Cain in his First Claim for Relief, nor was the area where Cain's accident occurred a "place of employment" as contemplated by OSEA § 654.015. *See* Dkt. #121, pp. 22-23; Dkt. #154, pp. 24-26.  Cain counters the first of these arguments by asserting that § 654.015, together with the rest of the OSEA, merely "'codifies the common-law duty to provide safe places of employment,'" and although he "may cite safety code violations to plead an OSEA violation, . . . the safety codes are nothing more tha[n] standards of care against which to judge a defendant's conduct."  Dkt. #142, pp. 17, 18 (citing *Williamson I*, 2009 WL 4505442, at *5).  Though Cain does not attack Willamette Valley's argument head-on, he apparently believes expert testimony is not required in order for a jury to weigh the hospital's conduct against the regulatory requirements as a standard of care.  *See id*.

This determination is one that cannot be made at this stage of the proceedings.  Under Oregon case law, whether the evidence is sufficient for the court to determine that the jury can weigh the issue "solely on the basis of inference and common knowledge," without expert testimony, will depend on the specific evidence introduced at trial.  *Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 69, 577 P.2d 1322, 1327 (1978) (considering whether expert testimony was required in order to show a practicable alternative design).  In its motion for summary judgment, Willamette Valley has

25 - FINDINGS AND RECOMMENDATIONS

1   not addressed the type and degree of proof it claims would be
2   required to show each of the separate violations alleged by Cain in
3   support of his First Claim for Relief, nor has Cain engaged in such
4   an undertaking.   Indeed, it would appear that such an exercise
5   would be futile at this stage because the parties' conflicting
6   arguments undoubtedly would only serve to reveal the existence of
7   numerous issues of material fact that must be resolved at trial,
8   rather than on a motion for summary judgment.

9       Willamette Valley further argues that the penthouse roof was
10  not a "place of employment" as contemplated by OSEA § 654.015.
11  Dkt. #154, pp. 24-25.[5]  A "Place of employment" includes:

        (A) Every place, whether fixed or movable or
        moving, whether indoors or out or underground,
        and the premises and structures appurtenant
        thereto, where either temporarily or perma-
        nently an employee works or is intended to
        work; and

        (B) Every place where there is carried on any
        process, operation or activity related, either
        directly or indirectly, to an employer's
        industry, trade, business or occupa-
        tion. . . ."

19  O.R.S. § 654.005(8)(a).  The hospital argues none of its employees
20  knew Cain would be in the area where the accident occurred; none of
21  its employees used the ladder or the penthouse roof area; and the
22  ladder was only used by people who were not the hospital's
23  employees, but instead were independent contractors.  Dkt. #154,
24  p. 25.

25

26

27      [5]Because Willamette Valley only raised this argument in its
    reply brief, Cain has not had an opportunity to respond to the
28  argument.

26 - FINDINGS AND RECOMMENDATIONS

1    None of these arguments shows the area was not Cain's "place
2  of employment" at the time of the accident.  Clearly, Cain was
3  working temporarily in the area.  Cain qualifies as "an employee"
4  under the OSEA, even though he was not *the hospital's* employee.
5  *See* O.R.S. § 654.005(4)(a) (defining "Employee").  Cain was a
6  member of the class of persons OSEA § 654.015 was meant to protect,
7  and he suffered the type of injury the statute was intended to
8  protect against.  *See McAlpine*, *supra*.  I find that the place where
9  Cain's accident occurred was a "place of employment" for purposes
10 of OSEA § 654.015, and the hospital was an "owner" of that place of
11 employment.  I further find that issues of material fact preclude
12 summary judgment as to whether Willamette Valley violated the
13 statute.  I therefore recommend Willamette Valley's motion for
14 summary judgment be denied as to Cain's First Claim for Relief.

15

16 **Wylie Steel's Motion**

17    Wylie Steel asserts that OSEA § 654.015 does not apply to it
18 because is was never Cain's employer, nor does Cain make such an
19 allegation. Dkt. #128, pp. 8-9.  Cain responds that Wylie Steel is
20 contractually liable to satisfy the OSEA's requirements, asserting
21 that "[i]n Oregon, contractual obligations may define the scope of
22 duty for purposes of tort liability." Dkt. #143, p. 13 (citations
23 omitted); *see id.*, pp. 12-15.  Cain's argument misses the mark.
24 While Wylie Steel's contractual obligations may be relevant to show
25 its duty of care for purposes of Cain's negligence claim, any such
26 contractual obligations are irrelevant to whether Wylie Steel is an
27 entity covered by the OSEA.

28

Wylie Steel further argues that even if OSEA § 654.015 did apply to it, Cain has failed to show Wylie Steel violated any of the regulations and standards cited by Cain in support of his First Claim for Relief. *See* Dkt. #128, pp. 9-14. Cain has failed to respond to Wylie Steel's arguments regarding these specific allegations. *See* Dkt. #143, Cain's response to Wylie Steel's motion. Moreover, as Wylie Steel notes in its reply, Cain has conceded that a claim for violation of OSEA § 654.015 cannot lie against ESA, an entity that moved for partial summary judgment on that claim based on the lack of any type of employment relationship with Cain. Wylie Steel is similarly situated, in that it lacks any type of employment relationship with Cain.

I find that an OSEA claim cannot lie against Wylie Steel, and recommend that Wylie Steel's motion for summary judgment be granted as to Cain's First Claim for Relief.

### *THIRD CLAIM FOR RELIEF: PREMISES LIABILITY*

Cain's Third Claim for Relief is asserted against Willamette Valley and Bovis, for premises liability. Cain claims the hospital "owned or had possession of the premises," or alternatively, Bovis "had possession of the premises, including the rooftop where [Cain] was injured." Dkt. #91, ¶ 15. He claims these defendants failed to discover and warn invitees of "conditions of the premises that created an unreasonable risk of harm to the invitee, including the unsafe ladder." *Id.* He further claims they breached their duty of care "by installing or allowing the installation of a ladder that was not safe." *Id.*, ¶ 16.

28 - FINDINGS AND RECOMMENDATIONS

A threshold question here is Cain's status at the time of the accident. "Oregon adheres to the traditional rules governing the liability of an owner or possessor of land, under which the duties that the occupier owes to a person who comes on the land depend on whether the person is an invitee, licensee, or trespasser." *Walsh v. C & K Market, Inc.*, 171 Or. App. 536, 539, 16 P.3d 1179, 1181 (2000); *accord Stewart ex rel. Hill v. Kralman*, 240 Or. App. 510, 517, 248 P.3d 6, 9 (2011). Clearly, Cain was not a trespasser; the issue is whether he was an invitee or a licensee.

The *Walsh* court described two tests used in Oregon to determine whether one who comes onto land is an invitee:

> Oregon has adopted two tests for determining whether a person is an invitee. Under the first, the "economic advantage" test, anyone who comes on the premises for business that concerns the occupier, with the occupier's express or implied invitation, is an invitee. *Id.* at 191-92, 421 P.2d 370; *Reed v. Jackson County,* 105 Or. App. 24, 26-27, 803 P.2d 1194 (1990), *rev. den.* 311 Or. 261, 808 P.2d 1015 (1991). Under the second, the "invitation" test, a person is an invitee when the occupier, expressly or impliedly, leads the person to believe that it intended visitors to use the premises for the purpose that the person is pursuing and that the use was in accordance with the intention or design for which the premises were adapted or prepared. *Parker v. Hult Lumber & Plywood Co.,* 260 Or. 1, 8, 488 P.2d 454 (1971); *Reed,* 105 Or. App. at 26-27, 803 P.2d 1194.
>
> . . .
> We find section 332 [of *Restatement (Second) of Torts* (1974)] and the comments to it helpful in resolving the issues in this case. Section 332 provides:
> "(1) An invitee is either a public invitee or a business visitor.
> "(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

> "(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."
>
> A person whom section 332 calls a "public invitee" is, under the Oregon cases, an invitee under the invitation test, while a person whom section 332 calls a "business visitor" is an invitee under the economic advantage test. [Footnote omitted.]

*Walsh*, 171 Or. App. at 539-40, 16 P.3d at 1181-82.

A licensee, on the other hand, "is one who comes upon the premises for his own purposes with the consent of the possessor." *Rich v. Tite-Knot Pine Mill*, 245 Or. 185, 191, 421 P.2d 370, 373 (1966) (citation omitted). Further, a person "may be a licensee or invitee for one purpose or part of the premises and not for another." *Id.*, 245 Or. at 192, 421 P.2d at 374 (citations omitted).

The possessor's duties differ depending on whether the person who comes upon land is an invitee or a licensee. The possessor has a duty to warn an invitee of latent dangers, and "also has an affirmative duty to protect an invitee against those dangers in the condition of the premises of which he knows or should have known by the exercise of reasonable care." *Id.*, 245 Or. at 191, 421 P.2d at 373. With regard to a licensee, the possessor "owes no duty . . . to put his premises in a safe condition but is under an obligation to disclose to the licensee any concealed, dangerous conditions of the premises of which he has knowledge." *Id.*, 245 Or. at 191, 421 P.2d at 373-74 (citations omitted).

Under the circumstances of this case, Cain was an invitee at the time of the accident. "Workmen coming onto the premises to

30 - FINDINGS AND RECOMMENDATIONS

perform construction or repair work are, in effect, invitees, no matter whose employees they may be, and the duty owed them is generally analogous to that owed to any business invitee. . . . " *Dutton v. Donald M. Drake Co.*, 237 Or. 419, 425, 391 P.2d 761, 764 (1964) (internal quotations, citation omitted). As a result, the possessor of the premises at the time of the accident owed Cain a duty to protect him against those dangers that were known to the possessor, or about which the possessor should have known by the exercise of reasonable care.

The next question is who qualifies as "possessor" of the premises in question at the time of the accident. Neither Willamette Valley nor Bovis addresses the issue. *See* Dkt. #121, pp. 23-28; Dkt. #154, pp. 26-28; Dkt. #133, Dkt. #150.

Oregon has adopted the *Restatement (Second) of Torts* (1965), which defines a "possessor of land" as "'a person who is in occupation of the land with intent to control it.'" *Fireman's Fund Am. Ins. Cos. v. United States*, 482 F. Supp. 893, 896 (D. Or. 1979) (quoting *Restatement (Second) of Torts* § 348(E)(a)). It seems axiomatic that Willamette Valley was a possessor of the premises where Cain's accident took place. *But see Fireman's Fund, supra* (where the court held the United States Forest Service was not the possessor of a roadway where an accident occurred because it had not formally accepted the road under the terms of its contract with the general contractor).

The issue is not as clear with regard to Bovis's status, and the parties have not tendered any applicable portions of Bovis's contract with the hospital for the court's consideration here. Neither Bovis nor Cain has offered evidence sufficient for the

31 - FINDINGS AND RECOMMENDATIONS

court to determine, at this stage, whether Bovis could or should be considered a possessor of the premises for purposes of Cain's Third Claim for Relief.   For the time being, on this record, the court will assume for purposes of the following discussion that both the hospital and Bovis were possessors of the premises at the time of the accident.   References to "the defendants" in this section refer only to Willamette Valley and Bovis.

Willamette Valley argues "it cannot be liable for injuries that result from hazards which accompany the specialized work for which the independent contractor was hired."   Dkt. #121, p. 25 (citing *Esko v. Lovvold*, 272 Or. 27, 30-31, 534 P.2d 510, 512 (1975); *Yowell v. General Tire & Rubber*, 260 Or. 319, 325, 490 P.2d 145, 148 (1971)).   Although generally, one who employs an independent contractor is not liable for injuries caused by "a tortious act or omission of the contractor or his servants," *Macomber v. Cox*, 249 Or. 61, 65, 435 P.2d 462, 464 (citing *Restatement (Second) of Torts* § 409 (1965)), there are numerous exceptions to this rule.   Among others, when the employer of the independent contractor is under a _statutory_ duty to protect the safety of others, that statutory duty is nondelegable. *See Johnson v. Salem Title Co.*, 246 Or 409, 413-14, 425 P.2d 519, 522 (Or. 1967) (citing 2 Harper & James, *Torts* § 26.11 at 1406 (1956), and noting that "[t]his exception to nonliability has been adopted by the American Law Institute," citing *Restatement (Second) of Torts* § 424 (1965)).

Moreover, the hospital's argument is unavailing as regards "the specialized work for which the independent contractor was hired."   Although Cain and his employer were experts in the field

32 - FINDINGS AND RECOMMENDATIONS

of roofing, they were not experts in the construction or maintenance of ladders. *See Yowell v. General Tire & Rubber*, 260 Or. 319, 328, 490 P.2d 145, 149-50 (citations omitted).

One of the cases discussed by the *Yowell* court is instructive with regard to the defendants' liability as possessors of the premises. In *Wriglesworth v. Doyle*, 244 Or. 468, 417 P.2d 999 (1966), Doyle, the defendant building owner, hired an electrical company, Nelson, to perform electrical work on a remodel of Doyle's building. Wriglesworth was an electrician who worked for Nelson.

At some time in the past, prior to Doyle's ownership of the building, the ceiling in one of the rooms had been lowered about six feet. This "false ceiling" was constructed of sixteen-foot-long pieces of 2" x 6" lumber, joined to the walls with wooden plates, and covered with a material described as "firetex." The false ceiling was to be removed during the remodel. *See id.*, 244 Or. at 469-71, 417 P.2d at 1000.

To access some wires that were attached to electrical boxes in the original ceiling, Wriglesworth climbed onto the false ceiling (despite the fact that Nelson had ladders available at the site). After about five minutes, the false ceiling partially gave way, and Wriglesworth fell and was injured. He sued Doyle for damages under a premises liability theory. Doyle testified that he was unaware Wriglesworth was standing on the false ceiling. In addition, Doyle, himself, had never been on top of the false ceiling, and he had never tested it. What caused the false ceiling to fail remained unknown. *Id.*

Trial proceeded on the theory that Wriglesworth was a business invitee of Doyle's at the time of the accident, a theory the

33 - FINDINGS AND RECOMMENDATIONS

1  appellate court agreed was appropriate. *Id.* (citing *Dutton*, 237

2  Or. at 425, 391 P.2d at 764). The court described Doyle's duty to

3  Wriglesworth as follows:

> An occupier of land is liable to an invitee if
> he 'knows or by the exercise of reasonable
> care would discover the condition, and should
> realize that it involves an unreasonable risk
> of harm to such invitees,. . . .' 2 *Restate-*
> *ment (Second), Torts* § 343. *Approved in Lee*
> *v. Meier & Frank Co.*, 166 Or. 600, 605, 114
> P.2d 136 (1941). This implies that 'the
> possessor (land occupier) will take reasonable
> care to ascertain the actual condition of the
> premises.' 2 *Restatement (Second), Torts*,
> § 343, Comment D. However, the extent of the
> duty to inspect is dependent upon the circum-
> stances. This is stated in Comment E. of 2
> *Restatement (Second), Torts*, § 343, as
> follows:
>
>> 'In determining the extent of
>> preparation which an invitee is
>> entitled to expect to be made for
>> his protection, the nature of the
>> land and the purposes for which it
>> is used are of great impor-
>> tance. . . . [O]ne who goes on
>> business to the executive offices in
>> a factory is entitled to expect that
>> the possessor will exercise reason-
>> able care to secure his visitor's
>> safety. If, however, on some par-
>> ticular occasion, he is invited to
>> go on business into the factory
>> itself, he is not entitled to expect
>> that special preparation will be
>> made for his safety, but is entitled
>> to expect only such safety as he
>> would find in a properly conducted
>> factory.'

*Id.*, 244 Or. at 471-72, 417 P.2d at 1000-01.

The trial court denied Doyle's motions for involuntary nonsuit

and to withdraw the negligence issues from the jury. The Oregon

Supreme Court reversed, holding that "under the circumstances, a

reasonably prudent building owner had no duty to make such an

inspection as would have been necessary to discover the defective

34 - FINDINGS AND RECOMMENDATIONS

condition, if there were any." *Id.*, 244 Or. at 472, 417 P.2d at 1001. The court observed:

> There is no evidence that the defendant knew of any defect. There is no evidence that there was any manifestation which would have caused the defendant, as a reasonably prudent landowner, to suspect that there might be a defective condition and thus make a further inspection. As a general proposition, when a land occupier invites persons upon his land to make alterations or repairs, such occupier has no duty to make an inspection to determine that the premises are safe unless a reasonably prudent land occupier would be aware of circumstances indicating that the premises might not be safe and, therefore, would make an inspection to determine the condition of the premises.

*Id.*, 244 Or. at 472-73, 417 P.2d at 1001. In reaching this conclusion, the court relied on *McCarthy v. Hiers*, 81 Ga. App. 365, 59 S.E.2d 22 (1950), quoted with approval in a federal tort claims case, *Brown v. United States*, 122 F. Supp. 166 (D.N. Mex. 1954). In both of those cases, the plaintiffs were painters who fell through a defective roof. In both cases, the courts held the landowners were not liable when there was nothing that should have given the landowners notice that the roof was defective. *Id.*

Wriglesworth's status as Nelson's employee on the remodeling job is similar to Cain's status as McDonald's employee on the hospital remodel. In order to prevail on his claim that either of the defendants is liable as a possessor of the premises in question, Cain must show something existed that should have put the defendants on notice that the ladder in question might be defective in some way, giving rise to a duty on their part to inspect the ladder and to warn Cain of risks inherent in his use of the ladder.

35 - FINDINGS AND RECOMMENDATIONS

Contrary to the *Wriglesworth* holding, however, I find the issue is one of fact for the jury in this case.

On one hand, excerpts of Cain's deposition offered by the parties would appear to belie a claim that the defendants would have had reason to know something was amiss with regard to the ladder, giving rise to a duty to inspect the ladder. Cain testified that if he observed a defect in a ladder, it was "just common sense" that he would not use it. Dkt. #144, Ex. 1, Cain Depo., p. 71. If he had had any concerns about this particular ladder, he would have reported them to Bovis's representative, Del Allen. Cain specifically stated that on the day in question, the ladder "looked fine to [him]." Dkt. #122, Ex. 9, Cain Depo., p. 116. He had used this particular ladder more than once prior to the date of his accident, and other than finding the ladder a bit awkward to use, he did not recall having any problems or concerns about the ladder on those occasions, or when he began climbing the ladder on the day of his accident. Dkt. #122, Ex. 9, Cain Depo., pp. 114-16, 119.

Nevertheless, whether the defendants knew or should have known the ladder might be, or was, defective or dangerous ultimately presents an issue of foreseeability. "Ordinarily, foreseeability is a fact question for the jury." *McPherson v. State ex rel. Dept. of Corrections*, 210 Or. App. 602, 152 P.3d 918 (2007). It is only "in an extreme case," where the court can determine that "no reasonable factfinder could find the risk foreseeable," that resolution of the issue should be made by the court rather than the jury. *Id.* (citing *Fazzolari v. Portland School District No. 1J*, 303 Or. 1, 12, 734 P.2d 1326, 1333 (1987); *Donaca v. Curry Co.*, 303

36 - FINDINGS AND RECOMMENDATIONS

1   Or. 30, 38, 734 P.2d 1339, 1344 (1987)); *accord Miller ex rel.*
2   *Miller v. Tabor West Inv. Co.*, 223 Or. App. 700, 711, 196 P.3d
3   1049, 1055 (2008).

4        I find that here, the issue of whether or not the defendants
5   should have foreseen that someone could be injured by using the
6   ladder in question is an issue for the jury.  I therefore recommend
7   that Willamette Valley's and Bovis's motions for summary judgment
8   on this issue be denied.

9

10              ***FOURTH CLAIM FOR RELIEF: BOVIS'S VIOLATION OF THE ELA***

11       Cain's Fourth Claim for Relief is brought only against Bovis,
12  for its alleged violation of the Oregon Employer Liability Act,
13  O.R.S. §§ 654.305 to 654.335.  Cain claims Bovis and McDonald,
14  Cain's employer, "were engaged in a common enterprise within the
15  meaning of the [Act]"; Bovis either controlled or had the right to
16  control the methods and manner of McDonald's work on the project;
17  Bovis installed the ladder McDonald's employees had to use to gain
18  access to the penthouse roof; and Bovis "failed to use every
19  device, care, and precaution practicable for the protection and
20  safety of employees, including Michael Cain, and violated the [Act]
21  as set out in paragraph 11 above."  Dkt. #91, ¶¶ 17-19.  Paragraph
22  11 of Cain's Second Amended Complaint comprises Cain's First Claim
23  for Relief, alleging violation of the OSEA.  *See id.*, ¶ 11.  The
24  court has already found, above, that the OSEA does not apply to
25  Bovis.  However, paragraph 11 also refers to alleged violations of
26  numerous regulations relating to the design and maintenance of
27  ladders, and general safety standards.  *Id.* Evidence that Bovis
28  violated those rules and regulations may be evidence of the

1  statutory tort alleged here.  *See Wickham*, 2005 WL 1705028 at *2

2  (citing *Shahtout*, 298 Or. at 650 (1985)).

3       The ELA's general requirements are set forth in O.R.S. §

4  654.305, which provides:

> Generally, all owners, contractors or subcon-
> tractors and other persons having charge of,
> or responsibility for, any work involving a
> risk or danger to the employees or the public
> shall use every device, care and precaution
> that is practicable to use for the protection
> and safety of life and limb, limited only by
> the necessity for preserving the efficiency of
> the structure, machine or other apparatus or
> device, and without regard to the additional
> cost of suitable material or safety appliance
> and devices.

12 O.R.S. § 654.305.

13      The Act further requires compliance with all applicable

14 orders, rules, and codes:

> All owners, contractors, subcontractors, or
> persons whatsoever, engaged in the construc-
> tion, repairing, alteration, removal or
> painting of any building, bridge, viaduct or
> other structure, or in the erection or opera-
> tion of any machinery, or in the manufacture,
> transmission and use of electricity, or in the
> manufacture or use of any dangerous appliance
> or substance, shall see that all places of
> employment are in compliance with every appli-
> cable order, decision, direction, standard,
> rule or regulation made or prescribed by the
> Department of Consumer and Business Services
> pursuant to [the OSEA].

23 O.R.S. § 654.310.

24      All "owners, contractors, subcontractors, foremen, architects

25 [and] other persons having charge of the particular work" are

26 charged with the responsibility of ensuring the requirements of the

27 ELA are complied with.  O.R.S. § 654.315.

28

38 - FINDINGS AND RECOMMENDATIONS

1   "The ELA applies not only to direct employers but also to
2   'indirect employers.'" *Brown v. Boise-Cascade Corp.*, 150 Or. App.
3   391, 396, 946 P.2d 324, 329 (1997) (citing *Miller v. Georgia-*
4   *Pacific Corp.*, 294 Or. 750, 754, 662 P.2d 718, 720 (1983)).  In
5   *Brown*, the court explained that one of three disjunctive tests must
6   be satisfied to trigger indirect employer liability, to-wit: "(1)
7   the 'common enterprise' test; (2) the 'retained control' test; or
8   (3) the 'actual control' test." *Id*.

9       "Common enterprise" liability requires more than having one's
10  own employees working together with the plaintiff to further a
11  common enterprise." *Id.* (citing *Sacher v. Bohemia, Inc.*, 302 Or.
12  477, 485, 731 P.2d 434, 439 (1987)).  "Rather, the defendant must
13  exercise 'control or charge over the activity or instrumentality
14  that causes the injury[.]'" *Id.* (citing *Sacher*, 302 Or. at 486,
15  731 P.2d at 439-40).  There must actually be "a causal link between
16  the defendant's involvement in joint work and the plaintiff's
17  injury." *Id.*, 150 Or. App. at 397, 946 P.2d at 330.  The "retained
18  control" test requires that the defendant retain "a right to
19  control . . . the manner or method in which the risk-producing
20  activity [was] performed." *Id.*, 150 Or. App. at 398, 946 P.2d at
21  330 (citing *Miller*, 294 Or. at 754, 662 P.2d at 720).  And the
22  "actual control" test requires that the defendant actually control
23  the manner or method in which the risk-producing activity is
24  performed. *Miller*, 294 Or. at 7754, 662 P.2d at 720.

25      In the present case, viewing the evidence in the light most
26  favorable to Cain, as the non-moving party, the ELA could apply to
27  Bovis under any of the three tests.  The evidence establishes that
28  Cain's employer, McDonald, and Bovis were joint participants in the

39 - FINDINGS AND RECOMMENDATIONS

renovation of the hospital.  Whether, at the time of the injury, Cain was acting in concert with, under the retained control of, or even under the actual direction of Bovis, through its representative, Del Allen, is a hotly-disputed issue of fact.

Bovis argues that regardless of whether the ELA applies to it as Cain's indirect employer, it cannot be held liable under the Act even if the ladder did not meet the applicable codes and specifications.  Bovis contends it is undisputed that "the ladder at issue in this action had no obvious defects."  Dkt. #133, p. 13. It was not deformed and did not detach from the building.  Instead, Cain claims the ladder failed to meet applicable code requirements. Bovis argues that in order to have discovered these alleged defects, "its personnel would have had to physically measure every part of the ladder and compare it to OR OSHA, OAR and C.F.R. code sections, although it is undisputed that code compliance was the responsibility of the project architect."  *Id.*, p. 14.  Bovis argues it was not, as general contractor, required to double-check the design work of ESA, which was a licensed, reputable, experienced architectural firm.  *Id.*  Bovis maintains that as a general contractor, it cannot be held liable for "design decisions over which it maintained no control."  *Id.*, p. 13.

Cain responds that Bovis's duty under the ELA was non-delegable, and the reasonableness, or lack thereof, of holding a general contractor liable for design decisions made by the architect is irrelevant to the determination of whether Bovis met its duty to do everything practicable to maintain a safe workplace. *See* Dkt. #141, pp. 27-30.

40 - FINDINGS AND RECOMMENDATIONS

1    I find there are numerous issues of material fact that
2    preclude summary judgment in Bovis's favor on this issue.  First,
3    there are questions of fact regarding Del Allen's role at the time
4    of the accident.  It is not clear whether Allen simply accompanied
5    Cain, assisted Cain, participated in the decision to conduct the
6    roof leak test, or made the decision to conduct the test on his own
7    and then directed Cain how to do it.

8    Second, there are questions of fact regarding what actions
9    Bovis took, or failed to take, to ensure the workplace was in
10   compliance with the applicable rules and regulations, as required
11   by ELA § 654.310.  In this regard, the court is not persuaded by
12   Bovis's argument that at the time of the accident, no "active
13   construction site" existed.  *See* Dkt. #150, pp. 14-15.  Regardless
14   of whether Bovis "had demobilized," as it alleges, or whether OSHA
15   "determined that the worksite belonged to Mr. Cain's employer,
16   McDonald & Wetle," Dkt. #150, p. 15, the accident site nevertheless
17   constituted a "place of employment" as defined by the OSEA and the
18   ELA.  *See* O.R.S. § 654.005(8)(a).  As such, under the ELA, it was
19   Bovis's duty, as Cain's indirect employer, to take every
20   practicable step "for the protection and safety of life and limb,"
21   and to ensure compliance with all applicable orders, rules, and
22   regulations prescribed pursuant to the OSEA.  *See* O.R.S.
23   §§ 654.305, 654.310.  Bovis's argument that "the act of climbing a
24   fixed vertical ladder" was not "work involving a risk of

25

26

27

28

41 - FINDINGS AND RECOMMENDATIONS

substantial danger" within the meaning of § 654.305 itself presents an issue of fact for the jury's determination.[6]

Third, there are questions of fact regarding whether Bovis complied, or failed to comply, with any of the applicable statutes and regulations. (Unlike Wylie Steel, Bovis has not undertaken to itemize and attempt to refute each of the violations alleged by Cain.)

In summary, I find that on this record, substantial issues of material fact exist that preclude summary judgment, and I recommend Bovis's motion for summary judgment be denied on Cain's Fourth Claim for Relief, for violation of the ELA.

### FIFTH CLAIM FOR RELIEF: NEGLIGENCE

Cain's Fifth Claim for Relief alleges that all of the named defendants breached their "duty to ensure access to the roof was reasonably safe for workers . . . as set out in paragraphs 5, 11 and 13." Dkt. #91, ¶¶ 21 & 22. "Paragraphs . . . 11 and 13" comprise Cain's First and Second Claims for Relief, both alleging violations of the OSEA. As discussed above, the court has found that the only portion of those claims that should survive summary judgment is Cain's First Claim for Relief against Willamette Valley, as owner of the premises. To the extent Cain attempts to bootstrap his OSEA allegations into his negligence cause of action, such an attempt should be denied. On the other hand, evidence that

---

[6]Moreover, the statute does not govern "work involving a risk of _substantial_ danger," but rather "work involving a risk _or_ danger to the employees or the public." O.R.S. § 654.305 (emphasis added). Clearly, the work involved "a risk" of some degree.

42 - FINDINGS AND RECOMMENDATIONS

the defendants violated rules and regulations cited in paragraph 11 "may be evidence of the common law negligence." *Wickham*, 2005 WL 1705028 at *2 (citing *Shahtout*, 298 Or. at 650 (1985)).   *Cf. Waldner v. Stephens*, 345 Or. 526, 540, 200 P.3d 556, 564 (2008) (implying, in *dicta*, that violation of a statutory duty may support a common-law negligence claim).

"Paragraph[] 5" comprises Cain's assertions of the ways in which the ladder was defective, as follows:

> The ladder neither had graspable handrails nor had graspable siderails. The siderails as extended above the top rung were not graspable. Moreover, there was not sufficient non-skid treatment of the rungs. Any non-skid treatment on the rungs was made ineffective or insufficiently effective by paint covering. The ladder had slippery rungs. Because of the ladder design and manufacture, climbing the ladder was dangerous and making the transition from the vertical part of the ladder to the roof was dangerous. The ladder as installed and improperly maintained was unsafe for workers.

*Id.*, ¶ 5.

To prove a negligence claim under Oregon law, Cain must show that (1) the defendants owed him a duty, (2) they breached that duty, and (3) the breach was the cause in fact of some legally-cognizable damage to Cain. *See Brennen v. City of Eugene*, 285 Or. 401, 405, 591 P.2d 719, 722 (1979) (citing *McEvoy v. Helickson*, 277 Or. 781, 562 P.2d 540 (1977); *Harding v. Bell*, 265 Or. 202, 508 P.2d 216 (1973)).

The highest hurdle for Cain to surmount with regard to his negligence claim is causation. In Oregon, "cause" means "cause in fact," which "generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff

would not have been harmed." *Joshi v. Providence Health Sys. of Oregon Corp.*, 198 Or. App. 535, 538-39, 108 P.3d 1195, 1197 (2005) (citations omitted).    The "cause in fact" test is sometimes referred to as the "but for" test.    *See id.*    Under certain circumstances the Oregon courts have applied a "substantial factor" causation standard rather than a "but for" test.    Significantly, for purposes of this case, the Oregon Supreme Court has applied the "substantial factor" standard in circumstances where "'[t]he respective liability of multiple defendants depends on whether the negligence of each was a *substantial factor* in producing the complained of harm.'"    *Joshi v. Providence Health Sys. of Oregon Corp.*, 342 Or. 152, 160, 149 P.3d 1164, 1168 (2006) ("*Joshi II*") (quoting *McEwen v. Ortho Pharmaceutical*, 270 Or. 375, 418, 528 P.2d 522, 543 (1974)) (emphasis by the *Joshi II* court).

     The *Joshi II* court discussed in some detail the historical meaning and application the Oregon Supreme Court has given to the word "cause," *see id.*, 342 Or. at 158-62, 149 P.3d at 1167-69, noting that although the "but for" test "applies to the majority of cases," in most cases the "but for" and "substantial factor" standards will produce the same result.    *Id.*, 342 Or. at 162, 149 P.3d at 1169.    However, the "but for" test fails in a situation where there are two concurring causes for an event, either of which, operating alone, would have been enough to cause the identical result.    *Id.*, 342 Or. at 161, 149 P.3d at 1169 (citing with approval W. Page Keeton, *Prosser and Keeton on The Law of Torts* 266, § 41 (5th ed. 1984)).    In a case involving multiple tortfeasors, "the plaintiff need not show that each defendant's negligence was 'sufficient to bring about plaintiff's harm by

44 - FINDINGS AND RECOMMENDATIONS

itself; it is enough that [each defendant] substantially con-
tributed to the injuries eventually suffered by [the plaintiff].'"
*Id.*, 342 Or. at 160, 149 P.3d at 1168 (quoting *McEwen*, 270 Or. at
418, 528 P.2d at 543). Ultimately, "the standard to be applied in
a given case depends on the circumstances of that case." *Id.*, 342
Or. at 164, 149 P.3d at 1170. In any event, the mere fact that an
accident happened does not create a presumption of negligence.

> Indeed, the law presumes the exercise of due
> care and it is incumbent upon the party
> charging negligence to establish it by the
> greater weight of the evidence. It is also
> fundamental that negligence can not be predi-
> cated upon mere conjecture, guesswork, or
> speculation. It is not necessary to establish
> negligence by direct and positive evidence,
> but there must be facts from which a reason-
> able inference of negligence may be drawn.

*Simpson v. Hillman*, 163 Or. 357, 363, 97 P.2d 527, 529 (1940).
*Accord Bethel Sch. Dist. No. 2 v. Simplex Time Recorder Co.*, 185
F.3d 865 (Table), 1999 WL 397481 (9th Cir. May 26, 1999) (affirming
dismissal of action because plaintiff's "theory of causation simply
require[d] too much speculation") (citing *Simpson, supra*). Thus,
as noted above, Cain faces a difficult challenge in proving the
defendants' actions were a "substantial factor" in causing his
accident.

The defendants argue Cain cannot show his accident was the
result of any negligence on their part. They note that no one
witnessed the accident, and Cain testified that he has no memory of
how the accident actually occurred. The defendants urge the court
not to consider changes Cain made to his deposition testimony when
he reviewed the transcript, asserting that Cain gave clear,
unambiguous responses to the questions, and then tried to back-

45 - FINDINGS AND RECOMMENDATIONS

pedal and materially change his answers after the fact. The defendants argue that because there is no evidence of how or why the accident occurred, the jury could return a verdict for Cain only by speculating or guessing as to how and why Cain fell, something the law does not allow. *See Simpson, supra*. They further argue that even if Cain's changed testimony is allowed, the evidence still is based on speculation and is inadmissible evidence that cannot sustain Cain's burden of proof on his negligence claim. *See* Dkt. #133, Bovis's brief, pp. 6-12; Dkt. #150, Bovis's reply brief, pp. 3-12; Dkt. #121, Willamette Valley's brief, pp. 13-17; Dkt. #154, Willamette Valley's reply brief, pp. 10-18; Dkt. #128, Wylie Steel's brief, pp. 5-7, 14-17; Dkt. #152, Wylie Steel's reply brief, pp. 7-12.

Cain testified repeatedly in his deposition that he had no memory of how the accident occurred. He did not recall his foot slipping or his feet giving way, and he had no idea what had happened that caused him to fall. *See* Dkt. #122, Ex. 9, Cain Depo., pp. 200, 207, 260-61; Dkt. #134, Ex. A, Cain Depo., pp. 257-58. When Cain reviewed his deposition transcript, he made a material change to this testimony, noting, "My feet slipped off the ladder rung." Dkt. #144, Ex. 1, Change Sheet. As the reason for the correction, Cain stated:

> I have reviewed the transcript from when John Murphy, the Oregon OSHA investigator, inter-viewed me using a tape recorder. That interview was done less than 2 months after the accident. After reading the interview transcript, I remember that my feet slipped off the ladder rung.

*Id.*

1   Cain notes other witnesses also reported that he told them his
2   foot slipped.  In Del Allen's report to Bovis, he wrote, "Mike Cain
3   said his foot slipped at the top of the ladder."  Dkt. #144, Ex. 3,
4   Allen Depo., p. 51 (reading from accident report prepared by
5   Allen).  Cain points out that some courts have held circumstantial
6   evidence can be used to prove causation.  Dkt. #142, p. 7 (citing
7   *Holland v. United States*, 348 U.S. 121, 137, 75 S. Ct. 127, 140, 99
8   l. Ed. 150 (1954) ("Circumstantial evidence . . . is intrinsically
9   no different from testimonial evidence.").  He argues that in this
10  case, the circumstantial evidence would allow the jury to conclude
11  that his "foot slipped on a high rung of the ladder . . . because
12  the rungs on the ladder were deficient and failed to meet proper
13  code standards," and he tried to grasp the side rail but was unable
14  to do so "because the side rails were deficient and failed to meet
15  proper code standards."  Dkt. #142, p. 8; *see id.*, pp. 5-9 (citing
16  *Hurley v. Marriott Corp.*, Nos. 93-CV-1544, 94-CV-117, 1995 WL
17  694614 (N.D.N.Y. Nov. 21, 1995); *Sketo v. Olympic Ferries, Inc.*,
18  436 F.2d 1007 (9th Cir. 1970)).

19   The defendants argue that Cain cannot create a question of
20  fact simply by contradicting his prior deposition testimony.
21  Willamette Valley cites *Kennedy v. Allied Mutual Insurance Co.*, 952
22  F.2d 262 (9th Cir. 1991), in support of this proposition.   In
23  *Kennedy*, the court discussed the issue, holding as follows:

24          The general rule in the Ninth Circuit is
          that a party cannot create an issue of fact by
25          an affidavit contradicting his prior deposi-
          tion testimony.  *See Foster v. Arcata Asso-*
26          *ciates*, 772 F.2d 1453, 1462 (9th Cir. 1985),
          *cert. denied,* 475 U.S. 1048, 106 S. Ct. 1267,
27          89 L. Ed. 2d 576 (1986); *Radobenko v. Auto-*
          *mated Equipment Corp.*, 520 F.2d 540, 543-44
28          (9th Cir. 1975).  "[I]f a party who has been

47 - FINDINGS AND RECOMMENDATIONS

1           examined at length on deposition could raise
          an issue of fact simply by submitting an affi-
2           davit contradicting his own prior testimony,
          this would greatly diminish the utility of
3           summary judgment as a procedure for screening
          out sham issues of fact." *Foster*, 772 F.2d at
4           1462; *Radobenko*, 520 F.2d at 544 (quoting
          *Perma Research and Development Co. v. Singer
5           Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

6 *Kennedy*, 952 F.2d 266.  The court noted, however, that other

7 circuits "have urged caution in applying this rule," *id.* (citing

8 cases), and concluded:

9           [T]he *Foster-Radobenko* rule does not automa-
          tically dispose of every case in which a con-
10           tradictory affidavit is introduced to explain
          portions of earlier deposition testimony.
11           Rather, the *Radobenko* court was concerned with
          "sham" testimony that flatly contradicts
12           earlier testimony in an attempt to "create" an
          issue of fact and avoid summary judgment.
13           Therefore, before applying the *Radobenko* sanc-
          tion, the district court must make a factual
14           determination that the contradiction was
          actually a "sham."
15

16 *Kennedy*, 952 F.2d at 266-67.

17     First, this case is not one involving an affidavit

18 contradicting a prior deposition; rather, it involves corrections

19 made when a deponent read his deposition.  The court cannot say

20 that Cain's deposition corrections rise to the level of "sham"

21 testimony, particularly in light of the other corroborating

22 evidence cited by Cain.  The credibility of Cain's testimony is for

23 the jury to determine.  *See Anderson v. Liberty Lobby, Inc.*, 477

24 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)

25 ("Credibility determinations, the weighing of the evidence, and the

26 drawing of legitimate inferences from the facts are jury functions,

27 not those of a judge, whether he is ruling on a motion for summary

28 judgment or for a directed verdict.  The evidence of the non-movant

48 - FINDINGS AND RECOMMENDATIONS

1   is to be believed, and all justifiable inferences are to be drawn
2   in his favor.").

3       Willamette Valley offers an additional argument in favor of
4   its motion for summary judgment on Cain's negligence claim.  The
5   hospital argues that "[w]hen a negligence claim involves a[n]
6   obligation arising out of a special relationship or rule that
7   creates, defines or limits that obligation, then 'duty' remains a
8   formal element of the action."  Dkt. #121, p. 29 (citing
9   *Fazzolari*).  The hospital argues the present case involves "a
10  defined relationship between an owner/occupier of land and a
11  visitor," and therefore, Cain "must plead and prove a duty owed in
12  negligence against an owner or occupier of land" - in other words,
13  a claim identical to Cain's premises liability claim.  *Id.* (citing
14  *Thompson v. Klimp*, 101 Or. App. 127, 130, 789 P.2d 696, 698 (1990);
15  *Rex v. Albertson's, Inc.*, 102 Or. App. 178, 180-81, 792 P.2d 1248
16  (1990)).  Wylie Steel similarly argues that Cain's negligence claim
17  is redundant of his premises liability claim, which "cannot apply
18  to Wylie Steel because Wylie Steel was not an owner or possessor of
19  the premises."  Dkt. #128, p. 15.

20      I agree that as to Willamette Valley and Bovis, the premises
21  liability claim and the negligence claim are one and the same.  *See*
22  *Thompson v. Klimp*, 101 Or. App. 127, 789 P.2d 696 (1990) ("[A]
23  claim which invokes the obligations of a possessor of land to an
24  invitee or licensee has invoked a 'special relationship' that takes
25  the claim out of the generalized standards of common law
26  negligence.")  Cain's counsel conceded this point during oral
27  argument.  Therefore, Cain's ordinary negligence claim as to

28

Willamette Valley and Bovis should be dismissed as redundant of his premises liability claim.

As to Wylie Steel, however, Cain has not asserted a premises liability claim.  The fact that Wylie Steel "was not an owner or possessor of the premises" does not preclude an ordinary negligence claim against Wylie Steel based on its allegedly defective manufacture of the ladder.  Summary judgment generally is disfavored in negligence actions, and is proper only "'where the facts are essentially undisputed and only issues of law remain.'" *Commonwealth Utilities Corp. v. Goltens Trad. & Eng. PTE Ltd.*, 313 F.3d 541, 546 (9th Cir. 2002) (quoting *Camacho v. Du Sung Corp.*, 121 F.3d 1315, 1317 (9th Cir. 1997), in turn citing *Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707, 713 (9th Cir. 1978)).  In the present case, although most of the facts in the case are undisputed, the facts regarding how and why the accident occurred are in dispute.  Viewing those facts in the light most favorable to Cain, as the non-moving party, I find sufficient issues of material fact exist to preclude summary judgment for Wylie Steel and ESA on this claim.  I write separately with regard to Wylie Steel's additional arguments, below.

### SIXTH CLAIM FOR RELIEF: LOSS OF CONSORTIUM

The Cains assert a claim for Jennifer Cain against all of the defendants for "emotional distress and loss of consortium and other general damages."  Dkt. #91, ¶ 24.  "[A] claim for loss of consortium is based on injuries peculiar to a plaintiff that were the consequence of tortious injury suffered by the plaintiff's spouse."

1  *Shoemaker v. Management Recruiters Inter'l, Inc.*, 125 Or. App. 568,

2  865 P.2d 1331 (1993) (citations omitted).

3      Mrs. Cain's claim for loss of consortium does not present

4  separate issues from Cain's claims, discussed above.  *See Ross v.*

5  *Cuthbert*, 239 Or. 429, 432, 397 P.2d 529, 530 (1964) (wife's action

6  for loss of consortium "is measured by and subject to any defenses

7  available in a husband's action for redress of the same harm").

8  Because I recommend that some of Cain's claims survive summary

9  judgment, Mrs. Cain's loss of consortium claim also should survive

10 with respect to those same claims.

11

12                        ***WYLIE STEEL'S MOTION***

13     I write separately as to three issues raised by Wylie Steel in

14 its motion for summary judgment.  First, Wylie Steel claims all of

15 Cain's claims against it are barred by the applicable statute of

16 limitations.  Second, it claims Cain is attempting to assert an

17 entirely new claim against Wylie Steel in Cain's summary judgment

18 briefing.  And third, it seeks summary judgment on the indemnity

19 claims brought by Bovis and Willamette Valley.

20

21 ***Wylie Steel's Statute of Limitations Defense***

22     Wylie Steel asserts that all of Cain's claims against it are

23 barred by the applicable statute of limitations.[7]  Dkt. #128,

24

25 ───────────────

26     [7]At the time the Cains sought leave to amend their complaint
   to assert direct claims against Wylie Steel, Wylie Steel did not
   object to the amendment, but reserved the right to assert and
27 pursue affirmative defenses against those claims.  *See* Dkt. #129,
   Wylie Steel's statement of material facts, ¶ 28; admitted by Cain,
28 Dkt. #145, ¶ 28.

51 - FINDINGS AND RECOMMENDATIONS

pp. 17-19; Dkt. #152, pp. 3-7. Wylie Steel points to the following chronology of events, confirmed by the docket entries in the case:

01/01/08   Cain's accident occurred

06/23/09   Cain filed suit against Bovis and Willamette Valley (Dkt. #1)

11/17/09   Bovis filed a third-party claim against Wylie Steel (Dkt. #25)

11/18/09   Willamette Valley filed a third-party claim against Wylie Steel (Dkt. #26)

07/19/10   Cains filed claims against Wylie Steel (Dkt. #61)

Dkt. #128, p. 18.

Wylie Steel asserts, and Cain concurs, that personal injury claims must be filed within two years of the date of the injury. *See* Dkt. #128, Wylie Steel's brief, p. 18; Dkt. #143, Cain's brief, p. 18 (both citing O.R.S. § 12.110(1)). Cain, however, argues the "discovery rule" applies to personal injury actions, and he filed his direct claims against Wylie Steel within two years after he discovered that Wylie Steel fabricated the ladder, which he learned in September 2009, when the Cains' attorney received documents in response to discovery requests. *See* Dkt. #143, Cain's brief, pp. 18-20; Dkt. #144, Declr. of E.J. Simmons, ¶ 17.[8]

---

[8]     I did not know who made or designed the ladder until well into the discovery process. That is, the initial documents received from Oregon OSHA did not identify the designer or supplier of the ladder. I received documents from counsel in September 2009 that contained information about the architect on the project, and around that time I learned of Wylie Steel's involvement. Defendant Wylie Steel was a

(continued...)

52 - FINDINGS AND RECOMMENDATIONS

In Oregon, the parameters of the "discovery rule" are well settled. "At least in theory, . . . the discovery rule does not require *actual* discovery or knowledge of the claim but, instead, imputes to the plaintiff the level of knowledge that an exercise of reasonable care would have disclosed." *Johnson v. Multnomah County Dept. of Comm. Justice*, 344 Or. 111, 118, 178 P.3d 210, 213-14 (2008) (emphasis in original). The *Johnson* court described what "discovery" entails in this context:

> "[D]iscovery of an injury involves actual or imputed knowledge of three separate elements: harm, tortious conduct,FN2/ and causation. *Gaston v. Parsons*, 318 Or. 347, 355, 864 P.2d 1319 (1994). In other words, the . . . claim period does not commence to run, under the discovery rule, until a plaintiff knows or, in the exercise of reasonable care should know, that he or she has been injured and that there is a substantial possibility that the injury was caused by an identified person's tortious conduct. *Adams [v. Oregon State Police*, 289 Or. 233,] 239[, 611 P.2d 1153 (1980)] (so stating).
> FN2/ It may be argued that there is a fourth element, *viz.*, the probable identity of the tortfeasor. We think that that element inheres in the concept of "tortious conduct" – someone, after all, must have carried out the "conduct."

[8](...continued)
> third party defendant on November 17 and 18, 2009 when the original defendants filed amended complaints against the third party defendants. Plaintiff's motion to make direct claims against Wylie Steel was filed July 12, 2010. The amended complaint asserting direct claims against Wylie Steel was filed July 19, 2010.

Dkt. #144, Declr. of E.J. Simmons, ¶ 17.

1   *Johnson*, 344 Or. at 118, 178 P.3d at 214.[9]

2       Similar to the issue in *Johnson*, the issue here is whether and

3   when Cain "knew or should have known that his . . . injury was

4   caused by a particular defendant's tortious conduct[.]"   *Id.*   The

5   *Johnson* court held that the issue "ordinarily is a question of fact

6   for the jury; it may be decided on summary judgment as a matter of

7   law only if the record on summary judgment presents no triable

8   issue of fact."   *Id.* (citation omitted).

9       Wylie Steel argues this case does not present a "discovery

10  rule" situation, but instead "is the type of personal injury case

11  where all operative facts are deemed 'inherently discoverable' on

12  the date of the occurrence."   Dkt. #152, p. 4; *see id.*, pp. 4-7.

13  Wylie Steel cites *Workman v. Rajneesh Foundation International*, 84

14  Or. App. 226, 733 P.2d 908 (1987), in support of its argument.

15  *Workman* involved actions for defamation based on statements made at

16  a public school board meeting that the plaintiffs did not attend.

17  Both of the plaintiffs became aware of the statements "before the

18  end of the month in which they were made.   They brought their

19  actions one year and one day after the making of the statements."

20  *Id.*, 84 Or. App. at 228 n.1, 733 P.2d at 909 n.1.   The court

21  considered whether the statute of limitations was tolled until the

22  plaintiffs discovered the statements had been made, observing as

23  follows:

24                   Unless the language or history of the statute
                     [in question] dictates otherwise, the thresh-
25

26  ────────────────

27       [9]In *Johnson*, the court considered when the 180-day notice
    requirement began to run for purposes of notice under the Oregon
28  Tort Claims Act.   The same analysis applies in the statute of
    limitations context.

> old question should be whether the wrong and its probable consequences, by their nature, are *inherently discoverable* upon the occurrence. If the answers is yes, the policy underlying limitations on actions should prevail over the countervailing policy promoted by the discovery rule, even if the plaintiff in a particular case happened not to have discovered the wrong at the time when it occurred.

*Id.*, 84 Or. App. at 230, 733 P.2d at 911 (emphasis in original). The court answered the question "yes" with regard to statements made at a public meeting. The plaintiffs had learned of the statements and knew they had a right of action within a few days of the date the statements were made, and therefore the statute of limitations was not tolled. *Id.*, 84 Or. App. at 230-31, 733 P.2d at 911. *See Goodman-Herron v. Advanced Navigation & Positioning Corp.*, 940 F. Supp. 281, (D. Or. 1996) ("The discovery rule applies to defamation actions when the initial publication is confidential in nature and not something that a plaintiff would be presumed to have known about, even if he had exercised reasonable diligence.") (distinguishing *Workman* on its facts).

Wylie Steel also relies on *Gehrke v. CrafCo, Inc.*, 143 Or. App. 517, 923 P.2d 1333 (1996), where the plaintiff sued for injuries sustained in a slip-and-fall accident at a store. The plaintiff's attorney researched ownership of the store where the accident occurred, a "Ben Franklin" craft store, and determined from the Secretary of State that the store was owned by CrafCo doing business as Ben Franklin Crafts. Suit was filed "just before the statute of limitations was to expire," naming CrafCo as the defendant. *Id.*, 143 Or. App. at 519, 923 P.2d at 1334. CrafCo filed a prompt motion for summary judgment, supported by an

affidavit from CrafCo's president and registered agent, asserting that "CrafCo, Inc." had never owned, operated, or managed the store where the plaintiff's accident occurred. The plaintiff deposed the president and learned that another entity, PJDJS, actually owned and operated the store in question, while CrafCo operated a store under the same name in a different location.

Based on the information obtained during the deposition, the plaintiff filed an amended complaint that reasserted her claim against CrafCo, and added a similar claim against PJDJS. The amended complaint was filed more than two years after the plaintiff's injury occurred. The defendants filed motions for summary judgment, CrafCo renewing its previous argument regarding ownership of the store, and PJDJS asserting a statute of limitations defense. The motions were granted, and the plaintiff appealed, arguing issues of fact existed as to whether the plaintiff reasonably should have discovered the identity of PJDJS.

The parties agreed that for purposes of a negligence action, the statute of limitations begins to run when the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the identity of the tortfeasor." *Gehrke*, 143 Or. App. at 522, 923 P.2d at 1336 (citing *Duyck v. Tualatin Valley Irrigation Dist.,* 304 Or. 151, 742 P.2d 1176 (1987)). The defendant, however, argued Gehrke should have discovered the tortfeasor's correct identity within the limitations period. The defendant noted Gehrke knew where she had fallen, and knew the store's owner/operator was causally responsible for her fall. The court agreed, holding the discovery rule did not apply under the facts of the case. *Id.*, 143 Or. App. at 522-23, 923 P.2d 1333,

1336-37 ("In this case, plaintiff knew or should have known that she had been wronged by the possessor of the store at the time of the fall, even though she did not know whom the possessor was.").

The Oregon Court of Appeals distinguished *Gehrke* in two 2007 decisions. In the first, *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 160 P.3d 1 (2007), the plaintiff was abducted from her workplace and raped. She sued the owner of the shopping center and its property manager, alleging, *inter alia*, that they were negligent in failing to provide adequate security at the mall. The plaintiff's timely discovery requests were not answered for six months. When she finally received the responses, she learned that the mall had contracted for security services with Harbor Security. Two years and 98 days after the incident in question, the plaintiff amended her complaint to add a negligence claim against Harbor.

Harbor moved for summary judgment, claiming the plaintiff had failed to sue it within the applicable two-year statute of limitations. The plaintiff argued that under the "discovery rule," the two-year statute of limitations did not begin to run until she learned that Harbor might be liable for her injuries. The trial court granted Harbor's motion for summary judgment, finding that "Harbor's existence and identity were readily discoverable at the time of plaintiff's injury. In the absence of specific reasons why plaintiff was prevented from discovering Harbor's existence, . . . there was no basis for tolling the statute of limitations." *Cole*, 212 Or. App. at 512, 160 P.3d at 3.

The plaintiff appealed. She argued that at the time of the incident, she had no knowledge that *any* company provided security for the mall, and at the least, the question of whether she

57 - FINDINGS AND RECOMMENDATIONS

reasonably should have acquired that knowledge within two years from the date of the incident was a question for the jury. Harbor asserted two arguments in response. First, Harbor argued cases holding that personal injury actions are subject to the discovery rule were wrong and, therefore, not controlling. Second, Harbor argued that even if the discovery rule generally applied to the statute of limitations for personal injury actions, it was not applicable in this case pursuant to *Gehrke*, because 'the existence and identity of the alleged tortfeasor [was] 'inherently discoverable' from the moment of injury." *Id.*, 212 Or. App. at 513, 160 P.3d at 3.

The appellate court engaged in a thorough review of the history of the "discovery rule," and cases construing the rule, and rejected Harbor's argument that O.R.S. § 12.110(1) "should not be construed to include a discovery provision." *Id.*, 212 Or. App. at 518, 160 P.3d at 6; *see id.*, 212 Or. App. at 514-18, 160 P.3d at 3-6 (examining the history of the "discovery rule"). The court then addressed Harbor's argument that, under the facts of the case, the "discovery rule" should not apply.

The court first noted that the issue was before it in the context of an appeal from the trial court's grant of summary judgment. The applicable standard of review, therefore, required the court "to examine the evidence in the light most favorable to plaintiff, giving to plaintiff the benefit of all reasonable inferences, to determine whether there [was] a genuine issue of material fact and whether defendant [was] entitled to judgment as a matter of law." *Id.*, 212 Or. App. at 519, 160 P.3d at 6.

Turning to the issue of whether Harbor's possible liability to the plaintiff was "inherently discoverable," the court observed:

> When a plaintiff in the reasonable exercise of care should have become aware of a substantial possibility that another is responsible for her injury is a question of fact that can be resolved against the plaintiff on summary judgment only if the plaintiff should have achieved that awareness as a matter of law. *Johnson,* 210 Or. App. at 597-98, 152 P.3d 927.
> In some cases, the relevant facts are so obvious to a reasonable person that they are said to be "inherently discoverable." In such cases, we have said that the discovery rule does not "apply." *E.g., Workman v. Rajneesh Foundation International,* 84 Or. App. 226, 230, 733 P.2d 908, *rev den,* 303 Or. 700, 740 P.2d 1213 (1987). The phrasing is perhaps imprecise; in such cases, the discovery rule "applies," but its application does not toll the statute of limitations because the information should reasonably have been discovered earlier. Our opinion in *Gehrke* illustrates the proper application of the principle.

*Id.* The court reviewed its decision in *Gehrke*, and then held as follows:

> We conclude that this is not a case in which the relevant facts as to Harbor's identity and possible responsibility for plaintiff's assault were so obvious at the time of plaintiff's injury that the information may fairly be said to be "inherently discoverable." This case is not controlled by *Gehrke,* where the plaintiff, at the time of her injury, knew the identity of the tortfeasor - the store - and simply did not exercise reasonable diligence in nailing down accurately the identity of the store's owner. In this case, at the time of her injury, plaintiff did not know the identity of the tortfeasor - Harbor - at all. In fact, it is undisputed that she did not know that Sunnyside mall had contracted with *anyone* to provide security.

*Id.,* 212 Or. App. at 520, 160 P.3d at 7 (emphasis in original).

59 - FINDINGS AND RECOMMENDATIONS

The *Cole* court next addressed the question of "whether, as a matter of law, plaintiff in [the] case knew or should have known of the relevant facts some time after the injury but more than two years before the date that she filed the second amended complaint against Harbor." *Id.* The court found the issue could not be resolved as matter of law, but rather remained a question of fact that precluded summary judgment. *Id.*, 212 Or. App. at 520-21, 160 P.3d at 7.

Harbor contended that if the plaintiff had inquired properly during the three months following the incident, she could have discovered Harbor's involvement. "In other words, Harbor argue[d] that plaintiff had a duty to inquire and to inquire promptly." *Id.*, 212 Or. App. at 521, 160 P.3d at 7. The court's holding is directly on point in the present case:

> Whether a plaintiff is subject to a duty to inquire about facts that might trigger a statute of limitations, however, is itself a question of fact. *Johnson,* 210 Or. App. at 599-600, 152 P.3d 927. The duty arises only when there are facts that would prompt a reasonable person to make the inquiry. *Id.* . . . .
>
> Moreover, and in any event, *a statute of limitations to which the discovery rule applies is not triggered by a duty to inquire*. As the Supreme Court made clear in *Greene v. Legacy Emanuel Hospital*, 335 Or. 115, 123, 60 P.3d 535 (2002), . . . [w]hen there is a duty to inquire, . . . "the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Id.* . . . .
>
> In the end, Harbor's argument reduces to the assertion that plaintiff could have asked for the information earlier than she did. That, however, is not sufficient to trigger the statute of limitations.

*Cole*, 212 Or. App. at 521-22, 160 P.3d at 7-8 (emphasis added).

60 - FINDINGS AND RECOMMENDATIONS

1   The second 2007 case in which the Oregon Court of Appeals

2 distinguished *Gehrke* was *Budonov v. Kutsev*, 214 Or. App. 356, 164

3 P.3d 1212 (2007).    The plaintiffs there brought a fraud claim

4 against the sellers of a farm, mobile homes, and a migrant camp.

5 The court reached a similar conclusion to that in *Cole*.

6   In the present case, Wylie Steel's argument mirrors that of

7 Harbor Security in the *Cole* case.    Wylie Steel claims Cain should

8 have discovered its identity and possible liability because Cain

9 was aware, at the time of the accident, that his fall occurred on

10 the site of a construction project; he worked for a subcontractor

11 on the project; and "it was 'inherently discoverable' that the

12 owner, the primary contractor, or some other party who was part of

13 the construction of the area of the fall, would be potential

14 defendants." Dkt. #152, pp. 6-7 (footnote omitted). Wylie Steel's

15 "argument reduces to the assertion that [Cain] could have asked for

16 the information earlier than [he] did.    That, however, is not

17 sufficient to trigger the statute of limitations." *Cole*, 212 Or.

18 App. at 522, 160 P.3d at 8.    The court rejects Wylie Steel's

19 contention that its possible liability to Cain was 'inherently

20 discoverable' at the time of the accident.    Wylie Steel's motion

21 for summary judgment on the statute of limitations issue should,

22 therefore, be denied.

23

24 ***Assertion of a New Claim***

25   Wylie Steel argues that in responding to its motion for

26 summary judgment, Cain has completely ignored the negligence claim

27 asserted in his complaint, and instead attempts to put forth a new,

28 alternative theory, to-wit: "'Plaintiffs' claims against Wylie are

61 - FINDINGS AND RECOMMENDATIONS

simple: the fixed ladder it manufactured did not comply with Oregon OSHA, was not manufactured according to specifications, and was dangerous.'"  Dkt. #152, Wylie's reply brief, p. 15 (quoting Dkt. #143, Cain's response brief, p. 4).  Wylie Steel argues "[t]his 'summary' of plaintiffs' claims does not accurately reflect what they put at issue in their own pleadings, is not supported by Oregon law, and is not supported by the undisputed facts."  *Id.*

According to Wylie Steel, Cain is attempting to assert a claim for breach of a "design duty."  It claims it is not a design professional, and not a proper defendant for a "negligent design" claim.  Dkt. #12, p. 16 (noting that under Oregon law, "'design' issues are non-delegable"; citing *Johnson v. Salem Title Co.*, 246 Or. 409, 414-15, 524 P.2d 519, 522 (1967)).

Cain's negligence claim as to Wylie Steel is based on his factual allegation that the ladder's "manufacture" rendered it dangerous to climb.  *See* Dkt. #91, ¶ 5.  In addition, although Wylie Steel is not subject to the OSEA in this case, as discussed above, evidence that Wylie Steel failed to manufacture a safe ladder, as alleged in paragraph 11(n), could support Cain's claim that Wylie Steel's negligence contributed to his injury.  While Cain may be skating on thin ice with this claim, nevertheless, the issue of whether Wylie Steel's actions contributed to Cain's injury is one of fact for the jury.

While the court does not read Cain's allegation as asserting a new "design defect" claim against Wylie Steel, to the extent that is the case, the claim should not be allowed.  Thus, Wylie Steel's motion for summary judgment should be denied with regard to Cain's

general negligence claim, but granted insofar as Cain attempts to assert an unpled "design defect" claim against Wylie Steel.

#### *Indemnity Claims*

Wylie Steel argues that to the extent summary judgment is granted to Bovis and/or Willamette Valley, any corresponding indemnity and contribution claims of those defendants against Wylie Steel also should be dismissed. Dkt. #128, pp. 19-20. Such a result would seem to be obvious. If Cain cannot maintain a particular claim against Bovis and/or Willamette Valley, then no damages would be assessed against those defendants on those claims, and thus no claims for indemnity or contribution by those defendants would be possible.

Willamette Valley, however, argues that even if it were granted summary judgment on any of Cain's claims, it still could pursue "its defense costs under an indemnity theory of recovery against any party against whom it has made such claim." Dkt. #140, pp. 2-3. Ordinarily, to sustain an indemnity claim, the indemnitee first must be found liable to the injured third party. If the indemnitee is not found to be negligent or to have caused the third party's injuries, an indemnity claim cannot be sustained. *See Arch Chemicals, Inc. v. Radiator Specialty Co.*, 727 F. Supp. 2d 997, 999 (D. Or. 2010) (citing *Mayorga v. Costco Wholesale Corp.*, No. CV-06-882, 2007 WL 204017, at *9 (D. Or. Jan. 24, 2007); *Irwin Yacht Sales, Inc. v. Carver Boat Corp.*, 98 Or. App. 195, 198, 778 P.2d 982, 984 (1989); *Smith v. Urich*, 151 Or. App. 40, 947 P.2d 1125 (1997)).

1      However, when the indemnity claim is for defense costs only,

2   "a plaintiff who has denied liability, but still incurred defense

3   costs is not required to prove that it was actually liable to the

4   third party." *Arch Chemicals, Inc.*, 727 F. Supp. 2d at 1001

5   (citing *Moore Excavating, Inc. v. Consolidated Supply Co.*, 186 Or.

6   App. 324, 331, 63 P.3d 592 (2003) (reasoning that in such a case,

7   as between the indemnitee "and the putative indemnitor, the

8   indemnitor should bear the burden of the defense"). Thus,

9   Willamette Valley may be able to pursue its defense costs. The

10  issue, however, is premature for consideration at this stage of the

11  proceedings.

12      Wylie Steel further argues that if Cain's claims against it

13  are dismissed, but claims against Bovis and/or Willamette Valley

14  remain in the case, then "it would necessarily mean that the Court

15  has determined that such other party owed [the plaintiff] its own

16  separate and distinct duties – which cannot give rise to the pass-

17  through liability." *Id.*, p. 20 (citing, *inter alia*, O.R.S.

18  § 30.140 for the proposition that "contractual indemnity is not

19  available in the context of construction contracts where one party

20  seeks to have another party indemnify it for that party's own

21  negligence"). *Id.*, pp. 19-20. Simply because material issues of

22  fact preclude summary judgment on a claim does not "necessarily

23  mean that the court has determined" the defendants who remain in

24  the case "owed [their] own separate and distinct duties,"

25  preventing them from pursuing a claim for defense costs. Again,

26  the issue is premature at this stage of the proceedings.

27

28

64 - FINDINGS AND RECOMMENDATIONS

***CONCLUSION***

In summary, I recommend that:

1.   ESA's motion for summary judgment be granted as to Cain's First Claim for Relief, alleging violations of the OSEA.

2.   Bovis's motion for summary judgment be granted as to Cain's First and Second Claims for Relief, alleging violations of the OSEA.

3.   Willamette Valley's motion for summary judgment be denied as to Cain's First Claim for Relief, on the basis that the hospital is an "owner" for purposes of OSEA § 654.015, and material questions of fact exist regarding whether the hospital violated the statute.

4.   Wylie Steel's motion for summary judgment be granted as to Cain's First Claim for Relief, alleging violations of the OSEA.

5.   Willamette Valley's and Bovis's motions for summary judgment be denied as to Cain's Third Claim for Relief, alleging premises liability.

6.   Bovis's motion for summary judgment be denied as to Cain's Fourth Claim for Relief, for violation of the ELA.

7.   Willamette Valley's and Bovis's motions for summary judgment be granted, and Wylie Steel's and ESA's motions for summery judgment be denied, as to Cain's Fifth Claim for Relief, for negligence.

8.   All of the defendants' motions for summary judgment be denied as to the Cains' Sixth Claim for Relief, for loss of consortium.

9.   Wylie Steel's motion for summary judgment based on the statute of limitations be denied.

65 - FINDINGS AND RECOMMENDATIONS

10.  Wylie Steel's motion for summary judgment be denied with regard to Cain's general negligence claim, but granted insofar as Cain attempts to assert an unpled "design defect" claim against Wylie Steel.

11.  Wylie Steel's MSJ as to indemnity and contribution claims of Bovis and Willamette Valley be denied.

### SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due by **August 2, 2011**.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.  If objections are filed, then any response is due by **August 19, 2011**.  By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 14th day of July, 2011.

/s/ Dennis J. Hubel
_____
Dennis James Hubel
Unites States Magistrate Judge